**Theresa ZIOBRO**

**v.**

**CONNECTICUT INSTITUTE FOR THE BLIND and Stephen Earl.**

**Case No. H–90–CV–529 (JAC).**

United States District Court,
D. Connecticut.

March 30, 1993.

Angelo Cicchiello (Law Office of Angelo Cicchiello), Hartford, CT, for plaintiff.

Michael S. Lynch (Bai, Pollock & Dunnigan), Bridgeport, CT, for defendants.

## RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

JOSÉ A. CABRANES, Chief Judge:

This action arises out of the discharge of the plaintiff from her position as a teacher's assistant at the Oak Hill School, a division of

the Connecticut Institute for the Blind. The plaintiff alleges wrongful discharge, breach of contract, and a variety of other state law claims. Pending before the court is the defendants' Motion for Summary Judgment (filed June 1, 1992). The plaintiff filed a memorandum in opposition to this motion on July 23, 1992, and the defendants filed a reply memorandum on August 5, 1992. The court held a hearing on this motion on January 25, 1993, following which the parties submitted additional briefs at the court's request.

## FACTS

At the hearing in this matter on January 25, 1993, the parties agreed that the following facts are undisputed:

The plaintiff in this matter is Theresa Ziobro, who was employed as an assistant teacher at the Oak Hill School ("the School") in Hartford, Connecticut, from January 1988 to February 1989. The defendants in this matter are the Connecticut Institute for the Blind ("CIB"), a Connecticut corporation that owns and operates the School, and Stephen Earl, who was the director of personnel at the School. During the period of her employment at the School, the plaintiff was a member of the New England Health Care Employer Union, District 1199 ("the Union"). As a member of the Union, the plaintiff was subject to a collective bargaining agreement ("the Agreement") between the Union and the School. The Agreement became effective on July 1, 1987 and ran through June 30, 1990.

The first dispute between the plaintiff and the defendants arose during the spring of 1988, before the plaintiff's six-month probationary period had ended. At that time, the plaintiff was dismissed as a result of an incident in which a student sprayed himself with Mace (a temporarily disabling liquid used to immobilize an attacker) that the student had taken from the plaintiff's purse. The plaintiff was reinstated as an employee of the School following an appeal of her dismissal.

In early February 1989, Earl received an anonymous, handwritten letter which stated that an incident of child abuse had been committed by a member of the staff at the School. Following his receipt of the letter, Earl personally conducted an investigation and concluded that the letter had been written by the plaintiff. Earl did not consult with a handwriting expert during the course of this investigation. On February 13, 1989, Earl held a meeting in his office with the plaintiff, with her union representative, Carol Reynolds, and with a school administrator, Lynda Burbis. No other person attended the meeting. At the meeting, Earl asked the plaintiff if she had written the anonymous letter reporting the child abuse incident. The plaintiff read the letter and then denied having observed the incident, having written the letter, or having sent the letter to Earl. The plaintiff was then informed by Earl that she was dismissed from her position at the School because Earl had concluded that she had written the anonymous letter.

The plaintiff subsequently spoke with representatives of the Union to find out whether she could contest her dismissal. The union representatives informed her that she could file a grievance, and the plaintiff did so. On March 1, 1989, a meeting was held to consider the plaintiff's grievance. At that meeting, the plaintiff agreed to permit an independent handwriting expert to review the letter that the plaintiff was alleged to have sent. The plaintiff also agreed that her dismissal would become permanent if the expert determined that the plaintiff had written the letter. On March 10, 1989, a court-qualified handwriting expert, Pauline Patchis, submitted a report stating that the plaintiff had indeed written the letter. On April 4, 1989, the grievance committee notified the plaintiff of the expert's conclusion and informed her that her grievance was denied. The plaintiff's dismissal therefore remained in effect.

On June 1, 1990, the plaintiff commenced this action by filing a complaint ("the Complaint") in Connecticut Superior Court for the Judicial District of Hartford. Count One of the Complaint alleges wrongful discharge in violation of public policy; Count Two alleges breach of contract; Count Three alleges breach of implied contract; Count Four alleges promissory estoppel; Counts Five and Six allege intentional and unintentional infliction of emotional distress by defendant CIB;

Counts Seven and Eight allege intentional and unintentional infliction of emotional distress by Earl; Count Nine alleges slander by Earl; and Counts Ten and Eleven allege libel and slander by defendant CIB. The defendants filed a notice of removal to this court on June 29, 1990. The court denied the plaintiff's motion to remand on October 4, 1990. The court denied the defendants' motion to dismiss on April 3, 1991.

## DISCUSSION

### I

The defendants are entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (emphasis in original). While the court must view the inferences to be drawn from the facts in the light most favorable to the party opposing the motion, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986), a party may not "rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judg-

ment." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir.1986) (Feinberg, C.J.), *cert. denied*, 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987). The non-moving party may defeat the summary judgment motion by producing sufficient specific facts to establish that there is a genuine issue of material fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Finally, " 'mere conclusory allegations or denials' " in legal memoranda or oral argument are not evidence and cannot by themselves create a genuine issue of material fact where none would otherwise exist. *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 445 (2d Cir.1980) (quoting *SEC v. Research Automation Corp.*, 585 F.2d 31, 33 (2d Cir.1978)).

### II

The defendants seek summary judgment on all of the plaintiff's claims, arguing that each of the claims is preempted by Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185.[1] The defendants also contend that they are entitled to judgment as a matter of law on each of the plaintiff's claims on the basis of undisputed facts in the record.[2] The court shall consider the challenges to each of the plaintiff's claims in turn.

#### A. *Wrongful Discharge.*

Count One of the Complaint asserts a claim of wrongful discharge against both defendants. In making this claim, the plaintiff asserts that Conn.Gen.Stat. § 17a–101[3] es-

---

1. *See* Memorandum of Law in Support of Defendants' Motion for Summary Judgment (filed June 1, 1992) ("Defendants' June 1 Memorandum") at 8–21. Section 301 of the LMRA, 29 U.S.C. § 185, provides in pertinent part that
 [s]uits for violation of contracts between an employee and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

2. *See* Defendants' June 1 Memorandum at 21–36.

3. Conn.Gen.Stat. § 17a–101 provides in pertinent part that

(a) The public policy of this state is: To protect children whose health and welfare may be adversely affected through injury and neglect; to strengthen the family and to make the home safe for children by enhancing the parental capacity for good child care; to provide a temporary or permanent nurturing and safe environment for children when necessary; and for these purposes to require the reporting of suspected child abuse, investigation of such reports by a social agency, and provision of services, where needed, to such child and family.

(b) Any ... school guidance counselor, school paraprofessional, [or] social worker ... who has reasonable cause to suspect or believe that any child under the age of eighteen ... is in a condition which is the result of maltreatment

tablishes a public policy of encouraging certain professional persons—including teachers—to report incidents of child abuse. The plaintiff argues that the defendants violated this public policy by failing to conduct an adequate investigation before dismissing her on the ground that she had improperly reported an incident of child abuse.[4] The defendants now seek summary judgment on the wrongful discharge claim, arguing that this claim is preempted by Section 301 of the LMRA. The court finds the defendants' arguments unpersuasive.

■ Section 301 preempts state law claims that are "substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract." *Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 220, 105 S.Ct. 1904, 1916, 85 L.Ed.2d 206 (1985). But Section 301 does not preempt state law claims that simply require courts to consider the same *factual* issues that would be raised by claims under a collective bargaining agreement. *See Lingle v. Norge Division of Magic Chef, Inc.,* 486 U.S. 399, 409, 108 S.Ct. 1877, 1883, 100 L.Ed.2d 410 (1988) (holding that Section 301 does not preempt retaliatory discharge claim brought under Illinois law).

■ In light of *Lingle,* it is clear that Section 301 does not preempt the plaintiff's wrongful discharge claim. A wrongful discharge claim can be established under Connecticut law if the plaintiff proves there was "a demonstrably *improper* reason for dismissal, a reason whose impropriety is derived from some important violation of public policy." *Sheets v. Teddy's Frosted Foods, Inc.,* 179 Conn. 471, 475, 427 A.2d 385 (1980) (emphasis in original); *see also Magnan v. Anaconda Industries, Inc.,* 193 Conn. 558, 562, 479 A.2d 781 (1984) (noting that majority of courts have approved common-law tort of wrongful discharge). To make the required showing, it is not necessary for the plaintiff

to prove that the defendants violated the terms of the collective bargaining agreement: the plaintiff could show, for example, that the defendants' investigation of the anonymous letter was so inadequate that others in the plaintiff's position would be deterred from *properly* reporting incidents of child abuse by the fear that they would be wrongly accused of filing an improper report. Because the plaintiff's wrongful discharge claim can be resolved without reference to the collective bargaining agreement, this claim is not preempted by Section 301. The defendants' motion for summary judgment on Count One must therefore be denied.

B. *Breach of Contract and Promissory Estoppel.*

■ Count Two of the Complaint alleges a claim for breach of contract, Count Three alleges a claim for breach of implied contract, and Count Four alleges a claim of promissory estoppel against both defendants. These claims are based not on the collective bargaining agreement itself but on "statements, conditions, and/or representations" allegedly made to the plaintiff by agents of the defendant CIB.[5] The defendants argue that all of these claims are preempted by Section 301 of the LMRA.

As noted above, Section 301 of the LMRA preempts state law claims to the extent that the resolution of those claims "is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract." *Allis–Chalmers Corp.,* 471 U.S. at 220, 105 S.Ct. at 1916. While the plaintiff's breach-of-contract and promissory estoppel claims are not based directly on the collective bargaining agreement, the court could not evaluate the validity of these claims without determining whether the collective-bargaining agreement was intended to be the sole agreement between the parties. Because the plaintiff could not prevail on her breach-of-promise claim without an interpre-

---

4. *See* Memorandum of Law in Support of Plaintiff's Objection to Motion for Summary Judgment (filed July 23, 1992) ("Plaintiff's July 22 Memorandum") at 8–10.

5. *See* Complaint, Counts 2–4, at ¶ 7.

such as, but not limited to, malnutrition, sexual abuse, sexual exploitation, deprivation of necessities, emotional maltreatment, or cruel punishment . . . shall report or cause a report to be made in accordance with the provisions of subsection (c) of this section. . . .

. . . .

tation of the collective-bargaining agreement, these claims are preempted by Section 301 of the LMRA. The defendants' motion for summary judgment on Counts Two, Three, and Four must therefore be granted.

## C. *Intentional Infliction of Emotional Distress.*

Counts Five and Seven of the Complaint allege claims of intentional infliction of emotional distress against the defendant CIB and the defendant Stephen Earl, based on Earl's decision to terminate the plaintiff's employment. The defendants argue that they are entitled to summary judgment on these claims because the undisputed facts in the record establish (1) that the defendants' conduct was not "extreme and outrageous" and (2) that the defendants' statements were privileged and therefore cannot constitute grounds for this tort claim.

 The tort of intentional infliction of emotional distress requires the plaintiff to show, *inter alia*, that the defendants engaged in "extreme and outrageous" conduct. To meet this standard, the defendants must have engaged in conduct "exceeding *all bounds* usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind." *Petyan v. Ellis*, 200 Conn. 243, 254 n. 5, 510 A.2d 1337 (1986) (emphasis in original) (quoting Prosser & Keeton, *Torts* (5th ed.), § 12, at 60); *see also* Restatement (Second) of Torts § 46, comment (d) (1965) ("Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.") The issue of whether the defendants' conduct rises to this level is a question to be determined by the court in the first instance. *See Kintner v. Nidec–Torin Corp.*, 662 F.Supp. 112, 114 (D.Conn.1987).

 The court concludes that the conduct alleged by the plaintiff does not satisfy this test. The plaintiff has alleged that the defendants failed to conduct an adequate investigation before dismissing her; the plaintiff has also alleged that the defendants knew or

should have known when they dismissed her that the dismissal was not justified.[6] It now appears that the defendants were in fact justified in dismissing the plaintiff, since an independent handwriting expert has concluded that the plaintiff did write the anonymous letter that led to her dismissal. But even if the plaintiff's allegations were true, and even if the defendants did intend to cause emotional distress to the plaintiff, the plaintiff's claim must fail because the defendants' alleged conduct is not "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Restatement (Second) of Torts § 46, comment (d) (1965). Accordingly, the motion for summary judgment on Counts Five and Seven must be granted.

## D. *Unintentional Infliction of Emotional Distress.*

Counts Six and Eight of the Complaint allege claims of unintentional infliction of emotional distress against the defendant CIB and the defendant Stephen Earl, based on Earl's decision to terminate the plaintiff's employment. The defendants argue that they are entitled to summary judgment on these claims because the claims are barred by the CWCA and the LMRA. The court finds both arguments unpersuasive.

 First, the claims for unintentional infliction of emotional distress are not precluded by the CWCA. The workers' compensation law provides the exclusive remedy only for personal injuries "arising out of or in the course of [the plaintiff's] employment or on account of death resulting from personal injury so sustained." Conn.Gen.Stat. § 31–284. The CWCA therefore does not apply to injuries arising out of the *discharge* of an employee. This view of the statute is supported by the weight of authority among the Connecticut state courts. *See Fulco v. Norwich Roman Catholic Diocesan Corp.*, 27 Conn.App. 800, 808, 609 A.2d 1034 (1992) (holding that "[i]t would unduly strain the language of the statute for us to conclude

---

**6.** *See* Complaint, Counts 5 and 7, at ¶¶ 1–9.

that termination of employment creates a job-related injury"); *Sullivan v. Griffin Health Services Corp.*, Civil No. CV–90030911S, 1990 WL 283704 (Connecticut Superior Court for the Judicial District of Ansonia/Milford) (September 25, 1990) (holding that CWCA does not bar claim for unintentional infliction of emotional distress arising out of employee's termination); *see also Claps v. Moliterno Stone Sales, Inc.*, 819 F.Supp. 141, 149 (D.Conn.1993). Consequently, the CWCA does not require that summary judgment be granted on the claims for unintentional infliction of emotional distress.

■ Second, the claims for unintentional infliction of emotional distress are not preempted by the LMRA. As noted above, Section 301 of the LMRA preempts state law claims only where the resolution of those claims "is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract." *Allis–Chalmers Corp.*, 471 U.S. at 220, 105 S.Ct. at 1916. The plaintiff can prevail on a claim for unintentional infliction of emotional distress by showing that " 'the defendant should have realized that its conduct involved an unreasonable risk of causing emotional distress and that that distress, if it were caused, might result in illness or bodily harm.' " *Kilduff v. Adams, Inc.*, 219 Conn. 314, 325, 593 A.2d 478 (1991) (quoting *Montinieri v. Southern New England Telephone Co.*, 175 Conn. 337, 345, 398 A.2d 1180 (1978)). Because this showing can be made without reference to the collective-bargaining agreement, Section 301 of the LMRA does not bar the plaintiff's claims for intentional infliction of emotional distress. Accordingly, the defendants' motion for summary judgment on Counts Six and Eight must be denied.

### F. *Slander.*

■ Counts Nine and Eleven of the Complaint allege a claim of slander against the defendant Stephen A. Earl and the defendant CIB, based on oral statements made by Earl to the plaintiff in a meeting on February 13, 1989. The defendants seek summary judgment on these claims on grounds that the allegedly defamatory statements were both unpublished and privileged. Because the court finds that the statements were unpub-

lished, the defendants' motion for summary judgment on these claims must be granted.

A claim for slander or libel requires the plaintiff to establish that there was "an unprivileged publication of a false and defamatory statement." *Strada v. Connecticut Newspapers, Inc.*, 193 Conn. 313, 316, 477 A.2d 1005 (1984). This court has held that "the dissemination of an allegedly defamatory material among employees of a corporate defendant does not constitute a separate 'publication' of that material under Connecticut law." *L. Cohen & Co. v. Dun & Bradstreet, Inc.*, 629 F.Supp. 1425, 1427 (D.Conn. 1986) (citing *Halsell v. Kimberly–Clark Corporation*, 683 F.2d 285 (8th Cir.1982), *cert. denied*, 459 U.S. 1205, 103 S.Ct. 1194, 75 L.Ed.2d 438 (1983)). The plaintiff has alleged that the defendant CIB is a Connecticut corporation, and the plaintiff has not genuinely disputed the defendants' contention that the only persons present at the meeting on February 13, 1989 were employees of CIB. Because the undisputed facts establish that Earl's allegedly defamatory oral statements were not "published," the defendants are entitled to judgment as a matter of law on the slander claims. Accordingly, the defendants' motion for summary judgment on Counts Nine and Eleven must be granted.

### G. *Libel.*

Count Ten alleges a claim of libel against the defendant Stephen A. Earl and the defendant CIB, based on written statements made on behalf of the School in an unemployment compensation form. The defendants seek summary judgment on this claim on grounds that the allegedly defamatory statements were both unpublished and privileged. Because the court finds that these statements were privileged, the defendants' motion for summary judgment on this claim must be granted.

■ It has long been established that statements made in judicial proceedings are absolutely privileged against defamation claims. *See Petyan*, 200 Conn. at 245, 510 A.2d 1337; *see also Blakeslee & Sons v. Carroll*, 64 Conn. 223, 232, 29 A. 473 (1894). For purposes of this rule, written statements

made in unemployment compensation forms are deemed to be statements made in the course of judicial proceedings. *See Petyan,* 200 Conn. at 247, 510 A.2d 1337 (holding that "an employer who discharges an employee has an absolute privilege when supplying the information necessary for the 'unemployment notice' required by regulation"). The plaintiff has alleged that the defendants filed an unemployment compensation form which indicated that the reason for the plaintiff's dismissal was "poor work performance."[7] Because the alleged statement was made in an unemployment compensation form filed in connection with the plaintiff's discharge, the statement is absolutely privileged under Connecticut law and the defendants are entitled to judgment as a matter of law on the libel claim. Accordingly, the defendants' motion for summary judgment on Count Ten must be granted.

## CONCLUSION

To summarize: the defendants' motion for summary judgment is

(1) DENIED as to Count One, which alleges a claim of wrongful discharge;

(2) GRANTED as to Counts Two, Three, and Four, which allege claims of breach of contract, breach of implied contract, and promissory estoppel;

(3) GRANTED as to Counts Five and Seven, which allege claims of intentional infliction of emotional distress;

(4) DENIED as to Counts Six and Eight, which allege claims of unintentional infliction of emotional distress;

(5) GRANTED as to Counts Nine and Eleven, which allege claims of slander; and

(6) GRANTED as to Count Ten, which alleges a claim of libel.

For the foregoing reasons, the defendants' Motion for Summary Judgment is GRANTED in part and DENIED in part.

It is so ordered.

---

7. *See* Complaint, Count Ten, ¶ 9.