896 F.Supp. 78 (1994)
Diana T. GREGORY
v.
SOUTHERN NEW ENGLAND TELEPHONE COMPANY, Kenneth T. Gibson and David W. Galligan.
Civ. No. 3:93CV192(AHN).
United States District Court, D. Connecticut.
August 19, 1994.
*79 *80 Laurangene Lyons, Sachs, Berman & Shire, New Haven, CT, for plaintiff.
Patricia Reilly, Tyler Cooper & Alcorn, New Haven, CT, for defendants.

RULING ON MOTIONS TO DISMISS
NEVAS, District Judge.
The plaintiff, Diana Gregory ("Gregory"), brings this twelve-count action against defendants, the Southern New England Telephone Company ("SNET"), and its employees Kenneth Gibson ("Gibson") and David W. Galligan ("Galligan") (collectively "defendants"). In her amended complaint Gregory alleges the following putative causes of action: counts I, IV, and VIII allege sex discrimination in violation of Title VII, 42 U.S.C. § 2000e et seq., counts II and VI allege intentional infliction of emotional distress, counts III and VII allege negligent infliction of emotional distress, count V alleges battery, counts IX and X allege breach of contract, and counts XI and XII allege breach of SNET's duty to investigate complaints and supervise employees.[1]
Presently, defendants move to dismiss all counts of the amended complaint pursuant to Federal Rules of Procedure 12(b)(6) for failure to state a claim upon which relief may be granted. For the reasons that follow, defendants' motion to dismiss [doc. # 12] is GRANTED in part and DENIED in part, and their supplemental motion to dismiss [doc. # 20] is DENIED.

THE STANDARD OF REVIEW
When considering a Rule 12(b)(6) motion to dismiss, the court is required to accept as true all factual allegations in the complaint and draw inferences from these allegations in the light most favorable to the plaintiff. See Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); Easton v. Sundram, 947 F.2d 1011, 1014-15 (2d Cir.1991), cert. denied, 504 U.S. 911, 112 S.Ct. 1943, 118 L.Ed.2d 548 (1992). Dismissal is warranted only if, under any set of facts that the plaintiff can prove consistent with the allegations, it is clear that no relief can be granted. See Hishon v. King & Spalding, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232-33, 81 L.Ed.2d 59 (1984); Frasier v. General Elec. Co., 930 F.2d 1004, 1007 (2d Cir.1991). "The issue on a motion to dismiss is not whether the plaintiff will prevail, but whether the plaintiff is entitled to offer evidence to support his or her claims." United States v. Yale New Haven Hosp., 727 F.Supp. 784, 786 (D.Conn.1990) (citing Scheuer, 416 U.S. at 235, 94 S.Ct. at 1686).

FACTS
Applying this standard, the facts are as follows. Gregory worked for SNET for approximately *81 fourteen years as a technician in SNET facilities in New Haven, Meriden and New Britain. Galligan was the district level manager for the maintenance center in Meriden while Gregory was employed there from 1986 until she transferred to New Britain in February of 1989. During this time, Galligan subjected her to the following harassment and discriminatory conduct: he forcefully kissed her while she was driving a SNET vehicle, was more personable with her than other employees which created animosity between Gregory and her co-workers, told her that he was attracted to her and repeatedly called her at home to convince her to withdraw the complaint against Gibson and SNET that she had filed with the Connecticut Commission on Human Rights and Opportunities ("CHRO"), and simultaneously with the United States Equal Employment Opportunity Commission ("EEOC").
Gibson was Gregory's immediate supervisor in New Britain. Gregory alleges that Gibson subjected her to continuous harassment and discrimination including, calling her by her last name when she asked him not to and when he did not do so with male employees, denying her time off or afternoon breaks although male co-workers were allowed such time, requiring her, but not her male co-workers, to ask permission to use the restroom and failing to set up meetings with SNET counselors as requested by Gregory. Based upon this conduct, Gregory filed a complaint against Gibson and SNET on June 17, 1991 with SNET's internal EEO office.
On November 26, 1991, Gregory filed a discrimination complaint with the CHRO and the EEOC against SNET and Gibson. On October 16, 1992, Gregory filed an amended complaint with these agencies charging Galligan with discrimination and unfair employment practices along with Gibson and SNET. On November 4, 1992, EEOC issued Gregory a right to sue letter.

DISCUSSION
In their motion to dismiss, defendants argue that Gregory's Title VII claim against Galligan must be dismissed as time barred, and that the individual defendants are not liable under Title VII.[2] In addition, defendants contend that the common law claims are preempted by § 301 or precluded under the Connecticut Workers' Compensation Act, and therefore must be dismissed. These arguments are addressed seriatim.

I. Title VII Claims

A. Exhaustion of Administrative Procedures

Defendants argue that the Title VII claims against Galligan are barred because Gregory failed to file a timely administrative charge of discrimination against Galligan, and the timely original EEOC complaint against Gibson and SNET is not properly expanded to include Galligan. The court agrees.
Title VII prohibits employers from discriminating against any individual with respect to the terms or privileges of employment on the basis of the employee's sex, and "[f]orbidden discrimination based on sex includes sexual harassment whether or not it results in tangible economic loss." Christoforou v. Ryder Truck Rental, 668 F.Supp. *82 294, 300 (S.D.N.Y.1987); accord Harris v. Forklift Sys., ___ U.S. ___, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993); Meritor Sav. Bank v. Vinson, 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986). Title VII claims may also be premised on an adverse employment decision resulting from retaliation against an employee because of the employee's opposition to an unlawful employment practice. See Kotcher v. Rosa and Sullivan Appliance, 957 F.2d 59, 64 (2d Cir.1992).
Before a plaintiff may bring a Title VII claim, however, the plaintiff must file a discrimination charge with the EEOC within 300 days of the alleged discrimination, state law requires filing within 180 days. See Zipes v. TWA, Inc., 455 U.S. 385, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982) (filing requirement not jurisdictional but more akin to a statute of limitations). Gregory's original complaint charged discrimination against Gibson relating to her work under his supervision in 1991, thus the defendants concede that count I of this complaint was timely filed. However, Gregory amended her complaint on October 16, 1992, to add allegations of sex discrimination, intentional infliction of emotional distress, negligent infliction of emotional distress, battery and breach of contract against Galligan.
Defendants contend that the allegations against Galligan included in the amended complaint relate to Galligan's conduct between 1987 and 1989, two to five years before Gregory filed her charge, and thus are time barred. At oral argument, Gregory's counsel conceded that the claims against Galligan were untimely, but argued that the allegations against Galligan could still be considered as against SNET. However, the complaint does not allege that Galligan's actions were part of a "continuous violation," that might "obviate the need for timely filing," Wingfield v. United Tech. Corp., 678 F.Supp. 973, 978-79 (D.Conn.1988), and bring the allegations against Galligan within the scope of the timely claims filed against SNET and Gibson. Rather, the allegations against Galligan are separate and distinct from the timely claims made against Gibson, and thus are not properly considered as against Galligan or SNET. Cf. Grich v. Textron Lycoming, 822 F.Supp. 66, 69-70 (D.Conn.1993) (court may find continuing violation where incidents of discrimination constitute a series of related acts, and are "not completed, distinct occurrences."); see also Vakharia v. Swedish Covenant Hosp., 824 F.Supp. 769, 774 (N.D.Ill.1993) (finding that untimely claims did not "relate back" to timely complaint). Therefore, counts IV and VIII shall be dismissed.

B. Individual Liability under Title VII

Notwithstanding Gregory's compliance with the requisite administrative procedures, in a supplemental motion, defendants argue that the claims against the individual defendants must be dismissed as Title VII does not provide for individual liability. The court disagrees.
The Second Circuit has not yet addressed the issue of individual liability under Title VII claims, and courts from other circuits are divided on this issue. The Ninth Circuit, for example, has held that civil liability under Title VII is limited to employers and does not extend to individual agents of the employer, see Miller v. Maxwell's Int'l, 991 F.2d 583, 587-88 (9th Cir.1993), cert. denied, ___ U.S. ___, 114 S.Ct. 1049, 127 L.Ed.2d 372 (1994). Several district courts outside of the Ninth Circuit have adopted this view and rejected individual liability under Title VII. See, e.g., Hernandez v. Velez, 1994 WL 394855, at *6 (D.P.R. July 20, 1994); Smith v. Capitol City Club of Montgomery, 850 F.Supp. 976 (M.D.Ala.1994); Lowry v. Clark, 843 F.Supp. 228 (E.D.Ky.1994); Dirksen v. City of Springfield, 842 F.Supp. 1117 (C.D.Ill.1994).
The majority of district courts in this circuit that have addressed this issue, however, have disagreed with the Ninth Circuit's interpretation and have found that individuals may be liable under Title VII. See, e.g., Dirschel v. Speck, 1994 WL 330262, at *5 (S.D.N.Y. July 8, 1994) (an individual acting as an agent of an employer may be subject to individual liability under Title VII); Archer v. Globe Motorists Supply Co., 833 F.Supp. 211, 214 (S.D.N.Y.1993) (individual liability may only be premised on allegations of individualized *83 personal misconduct); Bridges v. Eastman Kodak Co., 800 F.Supp. 1172, 1180 (S.D.N.Y.1992) (both individual and official liability may be imposed under Title VII). Accord Doe v. Shapiro, 852 F.Supp. 1246 (E.D.Pa.1994) (rejecting distinction between individual and official capacity and finding that individuals may be sued under Title VII). In the absence of guidance from the Second Circuit, and in the interests of consistency, the court will follow the existing authority in this circuit which recognizes individual liability under Title VII. Therefore, because Gregory alleges that the individual defendants were acting as agents of SNET, the individual defendants may be subject to liability under Title VII, and Gregory's claims will not be dismissed on these grounds.[3]

II. Common Law Claims

A. Section 301 Preemption

As noted above, in her amended complaint, Gregory asserts pendent state claims for breach of contract, battery, intentional and negligent infliction of emotional distress, and breach of the duty to investigate her complaint or supervise/train employees.
Defendants argue that § 301 of the Labor Management Relations Act ("LMRA") preempts Gregory's state common law claims. Further, they claim that under § 301, the claims must be dismissed because Gregory failed to exhaust the contractual grievance or arbitration procedures and that the claims are time barred under the § 301 six-month statute of limitations.
Gregory concedes that she has failed to exhaust the grievance and arbitration procedures pursuant to the collective bargaining agreement. She argues, however, that such exhaustion is not required because her state law claims neither derive from nor turn on the interpretation of the collective bargaining agreement. With limited exception, the court disagrees.
§ 301 of the LMRA grants subject matter jurisdiction to both federal and state courts over suits that allege violations of a collective bargaining agreement. The scope of the court's review is limited, however, to determining whether the arbitration provisions of the collective bargaining agreement apply to the claim, and not whether the agreement has actually been breached. The court lacks jurisdiction to hear substantive claims until the grievance and arbitration procedures have been exhausted, unless the plaintiff alleges that the failure to exhaust is a result of the union's breach of its duty of fair representation of the employee. See Vaca v. Sipes, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967).
§ 301 will govern an action and preempt state law claims where such claims are "substantially dependent upon analysis of the terms of an agreement made between parties in a labor contract." Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 220, 105 S.Ct. 1904, 1915-16, 85 L.Ed.2d 206 (1985); accord Ziobro v. Connecticut Inst. for the Blind, 818 F.Supp. 497, 501 (D.Conn.1993). See also Livadas v. Bradshaw, ___ U.S. ___, 114 S.Ct. 2068, 129 L.Ed.2d 93 (1994). § 301 will not, however, preempt state rules that "proscribe conduct, or establish rights and obligations, independent of a labor contract," Allis-Chalmers, 471 U.S. at 212, 105 S.Ct. at 1912, or claims that "simply require the court to consider the same factual issues that would be raised by claims under a collective bargaining agreement." Ziobro, 818 F.Supp. at 501. Thus, to determine whether Gregory's claims are preempted under § 301, the court must determine whether the application of the asserted claims requires interpretation of the collective bargaining agreement. Lingle v. Norge Division of Magic Chef, Inc., 486 U.S. 399, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988).
In counts IX and X, Gregory alleges that SNET "breached its contractual obligations to plaintiff." (Amend.Compl. ¶¶ 70, 75.) Yet, clearly, such allegations are based directly upon the labor contract and therefore are "not sufficiently independent of the collective bargaining agreement to withstand the preemptive force of § 301." International *84 Bd. of Elec. Workers v. Hechler, 481 U.S. 851, 859, 107 S.Ct. 2161, 2167, 95 L.Ed.2d 791 (1987). Similarly, in counts XI and XII, Gregory alleges that SNET failed to properly investigate Gregory's claims and failed to provide adequate training and supervision to prevent sex discrimination. Gregory refers generally to these failures as "breach[es] of [SNET's] duty to the plaintiff." (Amend.Compl. ¶¶ 80, 83.) However, inasmuch as the existence or scope of these duties is defined by the collective bargaining agreement, these claims will necessarily hinge on an interpretation of that agreement. Therefore, the court finds that the breach of duty claims are also preempted by § 301. Accord Livadas, ___ U.S. at ___, 114 S.Ct. at 2078 (§ 301 is designed to preclude circumvention of contractual grievance procedures by "`relabeling' as tort suits actions simply alleging breaches of duties assumed in collective bargaining agreements."); Ziobro, 818 F.Supp. at 504.

B. Workers' Compensation Act Preclusion

Although Gregory's claims for battery and intentional and negligent infliction of emotional distress are not so intrinsically related to the collective bargaining agreement as to be preempted by § 301, accord Vorvis v. SNET, 821 F.Supp. 851, 854 (D.Conn.1993), they fail on other grounds. First, Gregory's claims for negligent infliction of emotional distress are precluded by the Connecticut Workers' Compensation Act, Conn.Gen.Stat. §§ 31-284, 31-293a, which provides the exclusive remedy to employees for personal injuries arising out of and in the course of employment.
Furthermore, to the extent that Gregory asserts claims for intentional infliction of emotional distress against SNET, these are also barred by the exclusive provisions of the workers' compensation statute: This exclusivity of remedy is not eroded where, as here, the plaintiff alleges an intentional tort committed by a supervisor. Jett v. Dunlap, 179 Conn. 215, 217, 425 A.2d 1263 (1979). Nor has Gregory alleged that SNET authorized or directed the alleged misconduct or that the individual defendants acted as alter egos of the organization which would enable Gregory to avoid the exclusivity of the act. See Suarez v. Dickmont Plastics Corp., 229 Conn. 99, 106, 639 A.2d 507 (1994) (applying Jett exception to exclusivity of Workers' Compensation Act where "employer has committed an intentional tort or where the employer has engaged in wilful or serious misconduct."); compare Vorvis, 821 F.Supp. at 855; Claps v. Moliterno Stone Sales, Inc., 819 F.Supp. 141, 152-53 (D.Conn.1993) (employee should not be treated as an alter ego simply because he is a supervisor or foreman). Fulco v. Norwich Roman Catholic Diocesan Corp., 27 Conn.App. 800, 810, 609 A.2d 1034 (1992), on which Gregory relies to argue that the act does not bar her claims, is distinguishable: Fulco turned on the fact that the plaintiff's distress arose out of her termination, and not, as here, in the course of her employment and therefore worker's compensation did not apply.
However, as the statute does not bar intentional tort claims against fellow employees, see, e.g., Claps, 819 F.Supp. at 153; Conn.Gen.Stat. § 31-293a, the court must assess the viability of the claims for intentional infliction of emotional distress asserted against Gibson and Galligan and for battery asserted against Galligan. The court need not delve into the merits of the claims against Galligan because in light of the fact that the Title VII claim against Galligan shall be dismissed and the allegations against Galligan are wholly distinct from the allegations against Gibson, the court declines to exercise its supplemental (pendent party) jurisdiction over such claims. See 28 U.S.C. § 1367.
As the federal claim against Gibson will not be dismissed, supplemental jurisdiction is appropriately exercised with respect to the claim for intentional infliction of emotional distress against Gibson. To state a claim for intentional infliction of emotional distress, a plaintiff must show:
(1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the *85 conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe.
Murray v. Bridgeport Hospital, 40 Conn. Supp. 56, 62, 480 A.2d 610 (1984). Gregory's claim against Gibson tracks these basic elements. While it is for the court to make an initial determination as to whether the alleged misconduct meets the threshold requirements of outrageousness, Kintner v. Nidec-Torin Corp., 662 F.Supp. 112, 114 (D.Conn.1987); Reed v. Signode Corp., 652 F.Supp. 129, 137 (D.Conn.1986) (quoting Restatement (Second) of Torts § 46), at this stage, the court cannot conclude that Gregory will not be able to demonstrate that Gibson's conduct was so extreme and outrageous as to actionable. Compare Dirschel, 1994 WL 330262, at *9 (finding allegations of discrimination not so extreme and outrageous as to be actionable). Thus, the claim for intentional infliction of emotional distress shall not be dismissed. Accordingly, counts III and V-VII shall be dismissed in their entirety, and count II shall be dismissed as to SNET, but not as to Gibson.

CONCLUSION
Based on the foregoing, defendant's motion to dismiss [doc. # 12] is GRANTED in part and DENIED in part, and the supplemental motion to dismiss [doc. # 20] is DENIED. Counts III-XII are dismissed in their entirety, count II is dismissed as to SNET only, and defendant Galligan is dismissed from the case. The Title VII claim against SNET and Gibson in count I, and the claim against Gibson for intentional infliction of emotional distress in count II, survive the motions to dismiss.
NOTES
[1] Specifically, the claims are as follows: 1) count ITitle VII claim against SNET and Gibson; 2) count II  intentional infliction of emotional distress against Gibson and SNET; 3) count III  negligent infliction of emotional distress against Gibson and SNET; 4) count IV  Title VII hostile work environment claim against Galligan and SNET; 5) count V  battery claim against Galligan; 6) count VI  intentional infliction of emotional distress against Galligan and SNET; 7) count VII  negligent infliction of emotional distress against Galligan and SNET; 8) count VIII  Title VII hostile work environment claim against SNET based on Galligan's conduct; 9) counts IX and X  breach of contract against SNET; 10) counts XI and XII  claims for breach of duty to investigate complaints and supervise employees against SNET.
[2] Although the defendants' motion appears to press for preemption of all claims, including those under Title VII, at oral argument, defendants' counsel clarified that they did not intend to argue that § 301 preempted Gregory's Title VII claims, only the common law claims. Cf. Alexander v. Gardner-Denver Co., 415 U.S. 36, 47, 94 S.Ct. 1011, 1019, 39 L.Ed.2d 147 (1974) (an individual's pursuit of the grievance procedures under a collective bargaining agreement does not foreclose his right to pursue an independent action under Title VII); see also Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 412, 108 S.Ct. 1877, 1885, 100 L.Ed.2d 410 (1988) (§ 301 does not preempt remedies affirmatively endorsed by Congress). Furthermore, while defendants challenge whether Gregory has stated a claim for constructive discharge, constructive discharge is not a required element of a hostile work environment claim, the sufficiency of which would affect the viability of Gregory's Title VII claim. Rather, Gregory need only allege that the alleged sexual harassment "affected a term, condition or privilege of employment," Cosgrove v. Sears, Roebuck & Co., 9 F.3d 1033, 1042 (2d Cir.1993), and the allegations in count I meet this requirement. Therefore, it is unclear whether the defendants actually intend to press their motion to dismiss with respect to count I against SNET (Gregory's Title VII claim based on Gibson's conduct); to the extent that they do, these arguments are unavailing and the court need not dwell on them.
[3] Of course, this only has impact on Gregory's claim against Gibson because the court has already found that the claim against Galligan is time barred.