William R. REED

v.

**TOWN OF BRANFORD, Peter R. Stallings and Judy E. Gott.**

No. 395cv1244 (JBA).

United States District Court, D. Connecticut.

Dec. 13, 1996.

John R. Williams, The Law Offices of John R. Williams, New Haven, CT, for plaintiff.

Stephen J. Courtney, Gesmonde, Pietresimone, Sgrignari, Pinkus & Sachs, Hamden, CT, for defendants.

### RULING ON DEFENDANTS' MOTION TO DISMISS [doc. # 17]

ARTERTON, District Judge.

Plaintiff William R. Reed ("Reed") brought this suit, pursuant to 42 U.S.C. §§ 1983, 1985, and 1988, against the Town of Branford ("the Town"); Peter R. Stallings ("Stallings") Superintendent of the Town's Waste Water Treatment Plant; and Judy E. Gott ("Gott") First Selectman of the Town. This matter comes before the Court on defendants' motion to dismiss all counts of plaintiff's complaint, except for that aspect of the first count alleging procedural due process violations against the two individual defendants in their individual capacities.

In count one of his complaint, plaintiff claims that, in terminating his employment, the Town, Stallings, and Gott, in both their individual and official capacities, violated his right to the equal protection of the laws when they fired him on account of his age. In addition, plaintiff claims that defendants violated his substantive and procedural due process rights by terminating his employment and failing to provide him with a hearing and an opportunity to be heard. Count two states a claim against the Town for the intentional infliction of emotional distress. Counts three and four also state claims of intentional infliction of emotional distress against the individual defendants, Stallings and Gott, respectively.

Defendants have moved to dismiss plaintiff's equal protection claim against the Town and Stallings and Gott, in their official capacities, on the grounds that plaintiff has not pled a "custom or policy" of discrimination, as required under *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), and its progeny. Defendants also move to dismiss this count against all defendants on the grounds that the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, provides the exclusive remedy for plaintiff's claim. With respect to plaintiff's substantive due process claim, defendants move to dismiss on the grounds that plaintiff has no recognized due process right to public employment. Finally, defendants move to dismiss plaintiff's § 1985 claim because he has not alleged sufficient facts to state a claim of conspiracy under § 1985(3) and plaintiff's Fifth Amendment claim on the grounds that this Amendment applies solely to actions of the federal government.

With respect to plaintiff's second count, defendants move to dismiss because plaintiff did not file a written notice of intent to sue with the Town clerk, as required under Connecticut General Statute § 7–465(a). Finally, defendants move to dismiss counts three and four, which allege intentional infliction of emotional distress, for failure to state a claim upon which relief can be granted. For the following reasons, defendants' motion [doc. # 17] is GRANTED in part and DENIED in part.

### FACTS

For the purposes of this motion, the facts are briefly stated as follows. Plaintiff Reed was hired by defendants in April, 1979 as Assistant Superintendent of the Branford Sewage Treatment Facility. He served in this position until, at age 50, he was terminated on April 21, 1994 and replaced by a younger person who plaintiff alleges was substantially less qualified. Plaintiff further alleges that defendants have "falsely and maliciously" claimed that plaintiff was terminated because of incompetence or inadequate work performance.

## STANDARD

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests only the sufficiency of the complaint, *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974), and should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Anderson v. Coughlin*, 700 F.2d 37, 40 (2d Cir.1983). In making this determination, the court must accept as true the material facts alleged in the complaint and draw all reasonable inferences in favor of the non-moving party. *Staron v. McDonald's Corp.*, 51 F.3d 353, 355 (2d Cir.1995). *See also Scheuer*, 416 U.S. at 236, 94 S.Ct. at 1686.

## DISCUSSION

### COUNT ONE

#### I. *Age Discrimination*

■ In count one, plaintiff alleges, *inter alia*, that defendants impermissibly discharged him on account of his age. Defendants argue that this claim is preempted by the ADEA. While plaintiff may be precluded from bringing a § 1983 claim premised solely on a violation of the ADEA, plaintiff's age discrimination claim makes no reference to the ADEA, but rather looks directly to the Equal Protection Clause of the United States Constitution. The issue presented by defendants' motion to dismiss is thus whether the ADEA provides the exclusive remedy for all age discrimination in employment claims, including those alleging constitutional violations.

The Second Circuit has not yet ruled on whether all § 1983 claims based on age discrimination are preempted by the ADEA. However, the circuits that have considered the issue have held that ADEA provides the exclusive remedy for such discrimination. *See Zombro v. Baltimore City Police Department*, 868 F.2d 1364, 1369 (4th Cir.), *cert. denied*, 493 U.S. 850, 110 S.Ct. 147, 107 L.Ed.2d 106 (1989); *Ray v. Nimmo*, 704 F.2d 1480, 1485 (11th Cir.1983); *Paterson v. Weinberger*, 644 F.2d 521, 524–25 (5th Cir.

1981). District courts within this circuit, however, have been divided. *See Jungels v. State University College of New York*, 922 F.Supp. 779, 785 (W.D.N.Y.1996) (ADEA not exclusive remedy); *Gregor v. Derwinski*, 911 F.Supp. 643, 651 (W.D.N.Y.1996) (ADEA is exclusive remedy); *Reale v. Jenkins*, 1993 WL 37091, *4 (S.D.N.Y.) (ADEA is exclusive remedy); *Tranello v. Frey*, 758 F.Supp. 841, 850–51 n. 3 (W.D.N.Y.1991) (ADEA is exclusive remedy), *aff'd on other grounds*, 962 F.2d 244 (2d Cir.), *cert. denied*, 506 U.S. 1034, 113 S.Ct. 813, 121 L.Ed.2d 686 (1992).

Reviewing the prior district-court opinions from this circuit, the Court favors the reasoning of *Jungels*, the most recent. In *Jungels*, Judge Curtin observed that Second Circuit precedents establish that Title VII does not preempt § 1983 claims for unconstitutional sex and race discrimination in employment. 922 F.Supp. at 785 (citing *Saulpaugh v. Monroe Community Hospital*, 4 F.3d 134, 143 (2d Cir.1993)). The Second Circuit recently affirmed this position in *Annis v. County of Westchester*, 36 F.3d 251, 255 (2d Cir.1994). The *Jungels* court could discern no reason to distinguish the ADEA from Title VII for purposes of preemption. This Court reaches a similar conclusion, and notes that none of the prior district-court opinions in this Circuit address this concern; indeed, none provide more than a brief, conclusory analysis of the preemption question.

The *Jungels* court also relied on an earlier Northern District of Iowa opinion reaching the same result, *Mummelthie v. City of Mason City, Iowa*, 873 F.Supp. 1293 (N.D.Iowa 1995), *aff'd mem.*, 78 F.3d 589 (8th Cir.1996). In *Mummelthie*, Judge Bennet offers a highly comprehensive analysis of ADEA exclusivity, and considers the issue in significantly greater depth than the appellate court decisions reaching contrary results. *Mummelthie* criticizes *Zombro*, the leading circuit court decision on ADEA exclusivity, for failing to consider the close analogy between Title VII and the ADEA and for failing to examine the language and legislative history of the ADEA in order to determine legislative intent with respect to preemption. 873 F.Supp. at 1323. The *Mummelthie* court, in its own assessment of the language, struc-

ture, and legislative history of the ADEA, could discern no intent, either express or inferable, to preempt § 1983 claims based on age discrimination in violation of the constitution. *Id.* at 1324–28. This Court, like the *Jungels* court, finds the analysis in *Mummelthie* to be persuasive.

The Supreme Court has stated that in order for a § 1983 remedy to be foreclosed by a subsequent statute,

the statutory framework must be such that allowing a plaintiff to bring a § 1983 action would be inconsistent with Congress's carefully tailored scheme. The burden to demonstrate that Congress has expressly withdrawn the remedy is on the defendant. We do not lightly conclude that Congress intended to preclude reliance on § 1983 as a remedy for the deprivation of a federally secured right.

*Golden State Transit Corp. v. Los Angeles,* 493 U.S. 103, 106–07, 110 S.Ct. 444, 449, 107 L.Ed.2d 420 (1989). In light of the persuasive reasoning offered by *Jungels* and *Mummelthie,* which are not addressed in the defendants' briefs, the Court cannot conclude that defendants have met their heavy burden in attempting to show that the ADEA preempts § 1983 claims for unconstitutional age discrimination in employment.

## II. *Substantive Due Process*

■ Plaintiff claims that defendants' conduct during the course of his termination was of such an extreme nature as to violate the requirements of substantive due process protected by the Fourteenth Amendment. Defendants seek dismissal of this claim on the ground that termination from public employment may not give rise to a substantive due process claim.

The Second Circuit has articulated the purpose and limitations of substantive due process as follows:

The due process clause was intended to prevent government from abusing its power, or employing it as an instrument of oppression. The clause has been held to have a substantive component that protects individual liberty against certain government actions regardless of the fairness of the procedures used to implement them.

The Supreme Court has warned, however, that it has always been reluctant to expand the concept of substantive due process because guideposts for responsible decision-making in this uncharted area are scarce and open-ended. . . .

A substantive due process claim based on allegedly tortious conduct by a state actor therefore ordinarily requires evidence of conduct that can properly be characterized as arbitrary, or conscience-shocking, in a constitutional sense.

*Interport Pilots Agency v. Sammis,* 14 F.3d 133, 144 (2d Cir.1994) (quotations and citations omitted).

The Court finds that plaintiff's substantive due process claim may fairly be read to encompass not just plaintiff's termination, but also the attendant circumstances, including intentional infliction of emotional distress and malicious defamation.

■ Defendants are surely correct that termination from public employment alone cannot give rise to a substantive due process claim, for termination alone cannot fall into the category of government actions that are so impermissible that they can never be constitutionally undertaken "regardless of the fairness of the procedures used." Moreover, discriminatory termination alone probably cannot give rise to a substantive due process claim. "A plurality of the Supreme Court has recently stated that, where a § 1983 plaintiff alleges a cause of action protected by an 'explicit textual source' of the Constitution, 'that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing' that claim." *Kaluczky v. City of White Plains,* 57 F.3d 202, 211 (2d Cir.1995) (quoting *Albright v. Oliver,* 510 U.S. 266, 273–74, 114 S.Ct. 807, 813, 127 L.Ed.2d 114 (1994)). According to this rule, plaintiff's age discrimination claim must be assessed under the standards of the Equal Protection Clause, and not the doctrine of substantive due process.

However, plaintiff alleges more than just discriminatory termination: he also alleges misconduct that was intended to cause emotional harm and damage to his reputation. The Supreme Court has suggested that a

loss of employment coupled with reputational harm implicates cognizable liberty interests. *Board of Regents v. Roth,* 408 U.S. 564, 573, 92 S.Ct. 2701, 2707, 33 L.Ed.2d 548 (1972). As for emotional harm, defendants have not cited, and the Court has not identified, any cases indicating that intentional emotional harm, no matter how extreme, may never implicate liberty interests. Moreover, intentionality appears to be an important consideration in deciding whether misconduct by a state actor has crossed the line from a garden-variety tort into constitutional violation. *See Collins v. City of Harker Heights,* 503 U.S. 115, 127 n. 10, 112 S.Ct. 1061, 1069 n. 10, 117 L.Ed.2d 261 (1992) ("Historically, this guarantee of due process has been applied to deliberate decisions of government officials to deprive a person of life, liberty, or property.").

The cases relied upon by defendants are inapposite. While *Collins* does state that the Due Process Clause is not a "guarantee against incorrect or ill-advised personnel decisions," *id.* at 129, 112 S.Ct. at 1070–71 (citation omitted), the case does not preclude all substantive due process claims that might be brought by an employee against an employer. Plaintiff alleges not merely an "incorrect or ill-advised" personnel decision, but rather an intentionally harmful personnel decision coupled with malicious misstatements. While the Supreme Court observed in *Albright* that "the protections of substantive due process have for the most part been accorded to matters relating to marriage, family, procreation, and the right to bodily integrity," 510 U.S. at 272, 114 S.Ct. at 812, the Court did not limit the protections of substantive due process to those categories. Judge Covello's opinion in *Williams v. Perry,* 3:95cv1289, —— F.Supp. —— [1996 WL 805074] (AVC) (March 6, 1996), is distinguishable because the plaintiff in *Williams* was not terminated from employment, as Mr. Reed was. As Judge Covello himself noted, under controlling Supreme Court precedents, the Fourteenth Amendment provides no protection from defamatory statements by a state official *unless* those statements occur in

the course of termination of employment. Slip Op. at 8.

In light of the disfavored nature of substantive due process claims, plaintiff will have difficulty in showing that defendants' conduct rises to the level of a substantive due process violation. However, the case law does not support defendants' suggestion that a substantive due process claim may never arise from the employer-employee relationship. Nor does the case law indicate that malicious defamation and intentional infliction of emotional distress in the context of termination, if truly outrageous, may not give rise to a substantive due process claim. Accordingly, the Court cannot conclude that plaintiff can prove no set of facts that would rise to the level of "arbitrary, or conscience-shocking, in the constitutional sense." Therefore, dismissal under Fed.R.Civ.P. 12(b)(6) is inappropriate.

### III. *§ 1985 and the Fifth Amendment*

Plaintiff also alleges in count one that defendants violated his Fifth Amendment rights and conspired to deprive him of his constitutional rights in violation of § 1985(3). Plaintiff has now withdrawn voluntarily both these claims.

### IV. *Liability of the Town*

■ Count I is brought against defendants Gott and Stallings not just in their individual capacities, but also in their official capacities and against the town of Branford. Defendants have argued that plaintiff may not pursue his § 1983 claims against the town because there is no vicarious liability under § 1983. However, plaintiff seeks to hold the town liable not under a theory of respondeat superior, but rather pursuant to a claim that the town itself violated his constitutional rights. Under *Monell v. New York City Dept. of Social Services,* municipalities may be held liable under § 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." 436 U.S. 658, 694, 98 S.Ct. 2018, 2037–38, 56 L.Ed.2d 611 (1978).

Since *Monell,* as defendants recognized at oral argument, the Supreme Court has made clear that a single act may form the basis of

municipal liability, so long as the challenged act was the decision of a municipal policymaker. *See Walker v. City of New York,* 974 F.2d 293, 296 (2d Cir.1992). A policymaker is one who, under state law, possesses final authority to establish municipal policy with respect to the action ordered. *See id.* The complaint alleges that defendant Stallings is Superintendent of the Waste Water Treatment Plant in Branford, and that defendant Gott is chief executive officer of the town. Drawing all reasonable inferences in favor of the plaintiff, as the Court must do in a motion to dismiss, the complaint may fairly be read to allege that Stallings and Gott were municipal policymakers and that their actions with respect to plaintiff constituted the policy of the town such that the town may be held liable under *Monell.*

## COUNT TWO

Count two, claiming intentional infliction of emotional distress against the Town, has also been withdrawn by the plaintiff.

## COUNTS THREE & FOUR

In counts three and four, plaintiff states a claim against defendants Stallings and Gott in their individual capacity for the intentional infliction of emotional harm. Plaintiff claims that defendants intentionally inflicted emotional distress upon him by terminating him without due process on the improper ground of age, and by falsely asserting that he was fired for incompetence. With reference to these acts, plaintiff states the elements of a claim for intentional infliction in a largely conclusory fashion, including the element that defendants' conduct was "extreme and outrageous." Defendants move to dismiss on the ground that plaintiff has not alleged any conduct that is "extreme and outrageous."

The "extreme and outrageous" standard is a high one: "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Restatement (Second) of Torts § 46, comment d (1965), *quoted in, Ziobro v. Connecticut Institute for the Blind,* 818 F.Supp. 497, 502 (D.Conn.1993) (Cabranes, J.). "Mere insults, indignities, or annoyances that are not extreme or outrageous will not suffice." *Brown v. Ellis,* 484 A.2d 944, 946 (Conn.Super.1984).

Defendants ask the Court to determine as a matter of law that plaintiff's allegations do not rise to the level of "extreme and outrageous." Defendants cite a number of cases in which they claim stronger intentional infliction counts were dismissed or stricken. In opposition, plaintiff cites a number of cases going the other direction. Neither side has identified any cases that appear to be controlling.

Several courts have observed, "The issue of whether the defendants' conduct rises to this level [of extreme and outrageous] is a question to be determined by the court in the first instance." *See, e.g., Ziobro,* 818 F.Supp. at 502 (citation omitted). "The court determines whether the possibility of a finding of extreme and outrageous conduct exists before submitting the issue to the jury." *Williams,* slip op. at 14. However, it is not clear that the court need make such a determination at the motion to dismiss stage and in the absence of a complete factual record. Indeed, in light of the liberal pleading requirements under the Federal Rules of Civil Procedure, several decisions have permitted intentional infliction claims to go forward on bare allegations of extreme and outrageous conduct. *See Treuting v. Massachusetts Mutual Life Ins. Co.,* 3:96cv1542 (AHN) (November 14, 1996), slip op. at 5, 1996 WL 684411 (intentional infliction claim not dismissed where plaintiff alleged discriminatory termination under pretext of incompetence); *Gregory v. Southern New England Telephone Co.,* 896 F.Supp. 78, 85 (D.Conn.1994) (plaintiff alleged that defendant supervisor called her by her last name when she asked him not to, denied her afternoon breaks given to male employees, and engaged in other similar discriminatory conduct).

On the other hand, the Court is mindful that other decisions have conducted a more searching scrutiny of intentional infliction claims at the motion to dismiss stage. *See Williams,* slip op. at 14 (count dismissed where plaintiff alleged she was subject to

racist and sexist comments by coworkers and held to higher performance standard than male counterparts); *Kintner v. Nidec–Torin Corp.*, 662 F.Supp. 112, 114 (D.Conn.1987) (Cabranes, J.) (count dismissed where plaintiff alleged employer made fraudulent misrepresentations to him regarding his prospects with the employer).

However, the Court is persuaded that the mode of analysis exemplified by *Treuting* and *Gregory* is more consistent with the liberal pleading requirements of the Federal Rules and the very narrow scope of the motion to dismiss under Fed.R.Civ.P. 12(b)(6). *See Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 168, 113 S.Ct. 1160, 1163, 122 L.Ed.2d 517 (1993). The pleading requirements of the Federal Rules may be contrasted with the more demanding requirements applicable in Connecticut state court, from which this matter was removed. *See* Connecticut Superior Court Rules, Practice Book § 131 (complaint "shall contain a concise statement of the facts constituting the cause of action"). Conceivably, this difference could be a consideration in decisions to remove an action to federal court.

Although the issue is a close one, the Court cannot conclude that plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Harm to one's professional reputation, as by false charges of incompetence, is recognized by the law to be a particularly damaging injury. *See Proto v. Bridgeport Herald*, 136 Conn. 557, 565–66, 72 A.2d 820 (1950). The Court is not prepared to say that such injury could not be administered in such a manner so as to constitute "extreme and outrageous conduct." Accordingly, dismissal of plaintiff's intentional infliction claims in the absence of a more developed factual record would be inappropriate.

### CONCLUSION

For the foregoing reasons, defendants' Motion to Dismiss (Doc. # 17) is DENIED as to Counts III, IV, and the equal protection and substantive due process claims in Count I, and GRANTED as to Count II and the Fifth Amendment and § 1985 claims in Count I.

IT IS SO ORDERED.