Marcia BIMLER, Plaintiff,

v.

The STOP & SHOP SUPERMARKET
COMPANY a/k/a The Stop & Shop Su-
permarket Companies, Inc. and the
United Food and Commercial Workers'
Union Local 919, Defendants.

Civil Action No. 3:96CV770 (AHN).

United States District Court,
D. Connecticut.

March 31, 1997.

Kerin M. Woods, Anderson & Ferdon, P.C., Norwich, CT, for Marcia A. Bimler.

Michael D. O'Connell, Matthew W. Den Ouden, O'Connell, Flaherty & Attmore, Hartford, CT, Ann M. O'Neill, Michael F.X. Dolan, Murphy, Hesse, Toomey & Lehane, Quincy, MA, for Stop & Shop Co., Inc.

J. William Gagne, Jr., Jason W. Cohen, J. William Gagne & Assoc., Wethersfield, CT, for United Food & Commercial Workers Union, Local 919.

NEVAS, District Judge.

The Magistrate Judge's recommended ruling is hereby APPROVED, ADOPTED, and RATIFIED over objection. Plaintiff shall file, within thirty days hereof, an amended complaint conforming with the Magistrate Judge's recommended ruling. SO ORDERED.

### RECOMMENDED RULING ON THE DEFENDANTS' MOTIONS TO DISMISS

MARTINEZ, United States Magistrate Judge.

The plaintiff, Marcia Bimler, brings this action against her former employer, The Stop & Shop Supermarket Company a/k/a The Stop & Shop Supermarket Companies, Inc. ("Stop & Shop") and the United Food and Commercial Workers Union, Local 919 ("the union"), her exclusive bargaining unit representative while she was employed by Stop & Shop. Pending before the court are two motions to dismiss filed by Stop & Shop and one motion to dismiss filed by Local 919. For the reasons that follow, Stop & Shop's motion to dismiss filed on May 9, 1996 (doc. #10) should be denied and Stop & Shop's motion to dismiss filed June 7, 1996 (doc. #22) should be granted in part and denied in

part. Local 919's motion to dismiss (doc. # 8) also should be granted in part and denied in part.

## PROCEDURAL HISTORY

This action was originally brought in Connecticut Superior Court by a seven-count complaint dated March 29, 1996 and was removed to the district court on May 2, 1996. Thereafter, the defendant Stop & Shop moved to dismiss all six counts of the complaint that were directed against it and the defendant union moved to dismiss the single count directed against it. On May 28, 1996, the plaintiff filed an amended complaint containing four counts and also filed objections to the defendants' motions. Both defendants filed reply briefs and in addition Stop & Shop filed another motion to dismiss in which it incorporated many of the arguments it previously had made in support of its first motion to dismiss. No opposition to Stop & Shop's second motion to dismiss was filed.

## STANDARD OF REVIEW

When considering a Rule 12(b) motion to dismiss, the court accepts as true all factual allegations in the complaint and draws inferences from these allegations in the light most favorable to the plaintiff. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Easton v. Sundram,* 947 F.2d 1011, 1014–15 (2d Cir.1991), *cert. denied,* 504 U.S. 911, 112 S.Ct. 1943, 118 L.Ed.2d 548 (1992). Dismissal is warranted only if, under any set of facts that the plaintiff can prove consistent with the allegations, it is clear that no relief can be granted. *See Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232–33, 81 L.Ed.2d 59 (1984); *Frasier v. General Elec. Co.,* 930 F.2d 1004, 1007 (2d Cir.1991). "The issue on a motion to dismiss is not whether the plaintiff will prevail, but whether the plaintiff is entitled to offer evidence to support his or her claims." *United States v. Yale New Haven Hosp.,* 727 F.Supp. 784, 786 (D.Conn. 1990) (citing *Scheuer,* 416 U.S. at 232, 94 S.Ct. at 1684–85).

## FACTS

Keeping this standard in mind, the court accepts as true the following facts which are alleged in the plaintiff's amended complaint.

The plaintiff was an employee of Stop & Shop who worked at the customer service desk at the Stop & Shop in Norwich, Connecticut. As an employee of Stop & Shop, the plaintiff was represented by the union. A collective bargaining agreement existed between Stop & Shop and the union and provided for a formal grievance procedure.

On February 18, 1994, she and other co-workers met with a Stop & Shop manager and discussed store policy regarding the staffing of the Stop & Shop customer service desk and the utilization of customer service desk staff as cashiers. That same day, a co-worker of the plaintiff, acting on behalf of herself, the plaintiff and another co-worker, contacted a union representative about the meeting with the Stop & Shop manager. Upon the advice of the union representative, the co-worker documented what occurred in the meeting and provided copies of that documentation to the union representative and to Stop & Shop management.

On March 25, 1994, Stop & Shop reported allegations of improper and unlawful activities at the customer service desk to criminal investigators. The criminal investigators spoke with the plaintiff on March 28, 1994 and, on May 26, 1994, the plaintiff was arrested on charges of third degree larceny based upon allegedly unlawful balancing of coupon tabulations at Stop & Shop's courtesy desk. On the day of her arrest, the plaintiff was suspended by Stop & Shop. After a jury trial on the criminal charges in September, 1995, the plaintiff was found not guilty.

The plaintiff thereafter, informed the union that she was acquitted of the criminal charges. She also requested that the union undertake contractual grievance procedures on her behalf pursuant to the collective bargaining agreement between the union and Stop & Shop. On October 20, 1995, a meeting was held between union representatives, Stop & Shop and the plaintiff. After the plaintiff refused to accept certain terms offered by Stop & Shop at this meeting, a

union representative informed the plaintiff that she was terminated.

Based on these allegations, the plaintiff claims in count one of the amended complaint that she was suspended "because she exercised her right to free speach [sic] as to union matters regarding working conditions" and that her suspension was in violation of the First Amendment to the United States Constitution, Article 1 Section 4 of the Constitution of the State of Connecticut, and Connecticut General Statutes § 31–51q.

In the second count of the amended complaint, the plaintiff alleges that Stop & Shop was reckless and/or negligent in the manner in which it handled the criminal charges against her and in refusing to reinstate her after she was acquitted.

In the third count of the amended complaint, the plaintiff alleges that Stop & Shop defamed and disparaged the plaintiff's character and placed the plaintiff in a false light by communicating to her co-workers and peers that she had misappropriated funds and aided another co-worker in stealing from Stop & Shop.

The fourth count of the plaintiff's amended complaint alleges that the union breached the duty of fair representation that it owed to the plaintiff in connection with the plaintiff's complaints about working conditions and in connection with the criminal charges that were brought against the plaintiff.

## I. *STOP & SHOP'S MOTION TO DISMISS FILED MAY 9, 1996*

On May 9, 1996, Stop & Shop moved to dismiss all six of the counts asserted against it in the original complaint. The plaintiff amended her complaint and opposed Stop & Shop's motion to dismiss. In her opposition, the plaintiff argued that the issues raised in Stop & Shop's motion to dismiss were rendered moot by virtue of the plaintiff having amended her complaint. Stop & Shop contested the plaintiff's argument that the amended complaint rendered moot the issues raised in its motion, but nevertheless, filed

another motion to dismiss on June 7, 1996. In its second motion to dismiss, Stop & Shop addressed the three counts asserted against it in the plaintiff's amended complaint and, in support thereof, expressly incorporated several arguments originally asserted in its first motion to dismiss.

■ The issues raised in Stop & Shop's original motion to dismiss were not automatically rendered moot by the amendment of the plaintiff's complaint. *Bernstein v. N.V. Nederlandsche–Amerikaansche Stoomvaart–Maatschappij*, 76 F.Supp. 335 (D.C.N.Y. 1948) (motion challenging sufficiency of plaintiff's complaint deemed addressed to plaintiff's amended complaint). However, because Stop & Shop has filed a second motion to dismiss which incorporates the arguments made in its original motion, there is no need to separately decide both the original and the second motions to dismiss. For the sake of procedural clarity, the court recommends that the first motion to dismiss be denied. The court's recommended ruling on the second motion to dismiss addresses those arguments which were made in the original motion and incorporated in the second motion.[1]

## II. *STOP & SHOP'S MOTION TO DISMISS FILED JUNE 7, 1996*

### A. CLAIM OF WRONGFUL TERMINATION

■ Stop & Shop contends that the First Count of the plaintiff's amended complaint claiming wrongful termination should be dismissed for failure to state a claim upon which relief may be granted. Stop & Shop offers the following alternative arguments in support of its contention: (1) the plaintiff's claim is preempted by section 10 of the National Labor Relations Act (NLRA), 29 U.S.C. § 160; (2) the plaintiff's claim fails to aver that the plaintiff's termination was unlawful or that the plaintiff suffered any resulting damages; (3) the claim is preempted under section 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185; (4) the plaintiff is not entitled to the relief sought

---

**1.** Although the plaintiff did not respond to Stop & Shop's second motion to dismiss, the court considers the plaintiff's opposition to Stop & Shop's original motion to dismiss in deciding the second motion to dismiss.

because she is a union member covered by a collective bargaining agreement; (5) Connecticut General Statutes § 31–51q provides the exclusive remedy for the plaintiff's claim of wrongful termination; and (6) the plaintiff's factual allegations are insufficient to state a claim for which relief can be granted under Connecticut General Statutes § 31–51q.

This court concludes that the plaintiff's claim that she was wrongfully suspended and terminated for exercising her right to speak about union matters is preempted by section 10 of the NLRA and should therefore be dismissed. In light of the court's recommended ruling to dismiss the claim on the ground of federal labor law preemption, this court does not reach the other grounds offered by Stop & Shop in support of its motion to dismiss count one.

The National Labor Relations Act ("NLRA")[2] provides protection for substantive employee rights and prohibits unfair labor practices by employers and unions. Section 7 of the NLRA guarantees employees the right to organize, to bargain collectively and "to engage in other concerted activities for the purpose of ... mutual aid or protection."[3] 29 U.S.C. § 157. Section 8(a)(1) of the NLRA prohibits employers from interfering with employees in the exercise of the rights protected by section 7.[4] 29 U.S.C. § 158(a)(1). The National Labor Relations Board ("NLRB") is vested with the power to enforce sections 7 and 8 of the NLRA. 29 U.S.C. § 160(a). Toward that end, the NLRB has exclusive primary jurisdiction to decide disputes concerning unfair labor practices defined by section 8. 29 U.S.C. § 160; *San Diego Bldg. Trades Council v. Garmon,* 359 U.S. 236, 244–45, 79 S.Ct. 773, 779–80, 3

L.Ed.2d 775 (1959). In Garmon, the Supreme Court articulated a doctrine of preemption that not only mandates substantive preemption by federal labor law in the areas to which it applies, but also protects the exclusive jurisdiction of the NLRB over matters that are even arguably within the reach of the NLRA:

> When an activity is arguably subject to § 7 or § 8 of the [NLRA], the States as well as federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted.

*Id.* Thus, when the controversy at issue involves activity that is even arguably subject to sections 7 or 8 of the NLRA, the *Garmon* doctrine dictates that federal labor law preempt state regulation and that the NLRB have primary and exclusive jurisdiction of the controversy.

In this action, Stop & Shop contends that under the *Garmon* preemption doctrine the court lacks jurisdiction over the plaintiff's first claim because the matters at issue involve conduct that is arguably protected or prohibited by sections 7 and 8 of the NLRA. The plaintiff did not oppose Stop & Shop's argument for preemption under the *Garmon* doctrine. After careful consideration of the issues raised by Stop & Shop, the court concludes that the plaintiff's first count is preempted under the *Garmon* doctrine and should therefore be dismissed.

The first count of the amended complaint asserts a cause of action against Stop & Shop for the violation of the plaintiff's right to free speech under the United States Constitution, the Constitution of the State of Connecticut

---

**2.** The NLRA shall be used throughout this recommended ruling to refer to the National Labor Relations Act (1935), as amended by the Labor Management Relations (Taft–Hartley) Act (1947), the Labor–Management Reporting and Disclosure (Landrum–Griffin) Act (1959), and the Labor Management Cooperation Act (1978), codified at 29 U.S.C. § 141 *et seq.*

**3.** Section 7 provides in relevant part:
"Employees shall have the right to self-organization, to form, join or assist labor organizations, to bargain collectively through represen-

tatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection...."
29 U.S.C. § 157.

**4.** Section 8(a)(1) of the NLRA states:

It shall be an unfair labor practice for an employer ... to interfere with, restrain or coerce employees in the exercise of [ § 7] rights....
29 U.S.C. § 158(a)(1).

and Connecticut General Statutes § 31–51q.[5] The plaintiff alleges that she and two co-workers met with a Stop & Shop manager and discussed working conditions relating to the staffing of the Stop & Shop customer service desk and the utilization of customer service desk staff as cashiers. She further alleges that she "was suspended because she exercised her right to free speech [sic] as to union matters regarding working conditions," Amended Complaint, First Count, ¶ 22, and was thereafter terminated on October 20, 1995.[6]

The plaintiff's claim falls squarely within the primary and exclusive jurisdiction of the NLRB in that the facts alleged by the plaintiff constitute an unfair labor practice as defined by section 8(a)(1). A violation of section 8(a)(1) is established if (1) the employee's activity was concerted; (2) the employer was aware of its concerted nature; (3) the activity was protected by the NLRA; and (4) the adverse personnel action was motivated by the protected activity. *N.L.R.B. v. Oakes Machine Corp.*, 897 F.2d 84, 88 (2d Cir.1990). The allegations of first count of the amended complaint are sufficient to establish the claim as one that is arguably prohibited under section 8(a)(1).

■ First, the plaintiff's alleged conduct was concerted in that she and two other employees spoke with management about employee concerns. *N.L.R.B. v. City Disposal Systems, Inc.*, 465 U.S. 822, 830, 104 S.Ct. 1505, 1510–11, 79 L.Ed.2d 839 (1984) ("[t]he term 'concerted activities' is not defined in the Act but clearly embraces the activities of employees who have joined together in order to achieve common goals"); *Ewing v. N.L.R.B.*, 861 F.2d 353, 358 (1988)

("some linkage to group action [is required] in order for conduct to be deemed 'concerted' within the meaning of Section 7" (quotations omitted)). Although the complaint is not clear as to whether the plaintiff and her co-workers spoke with management collectively or whether they each approached management individually, that issue is not dispositive in determining whether the activity was concerted. Concerted activity encompasses the lone employee who is acting for or on behalf of other workers, who has discussed the matter with fellow workers, or who is acting alone to initiate group action such as bringing group complaints to the attention of management. *Meyers Industries (Meyers II)*, 281 N.L.R.B. 882, 1986 WL 54414 (1986), *aff'd*, 835 F.2d 1481 (D.C.Cir.1987), *cert. denied*, 487 U.S. 1205, 108 S.Ct. 2847, 101 L.Ed.2d 884 (1988).

Second, the fact that Stop & Shop was aware of the concerted nature of the plaintiff's activity may reasonably be inferred from the allegations that the plaintiff and two other co-workers discussed their concerns with management either jointly or, if individually, then all on the same day. *See* Amended Complaint, First Count, ¶ 5. Stop & Shop's awareness that the nature of the plaintiff's activity was concerted may also be reasonably inferred from the allegation that one employee memorialized the meetings of the three employees with management in a letter and provided a copy of the letter to management. *Id.* at ¶ 9. In addition, Stop & Shop's awareness may further be inferred by the nature of the concerns the three employees raised with management, e.g., matters relating to staffing issues at Stop & Shop. *Id.* at ¶ 5.

**5.** Section 31–51q of the Connecticut General Statutes provides:

Any employer ... who subjects any employee to . discipline or discharge on account of the exercise by such employee of rights guaranteed by the first amendment to the United States Constitution or section 3, 4 or 14 of article first of the constitution of the state, provided such activity does not substantially or materially interfere with the employee's bona fide job performance or the working relationship between the employee and the employer, shall be liable to such employee for damages....

**6.** Although the plaintiff does not allege the grounds for which she was terminated, it is reasonable to infer that the termination arose out of the same grounds as the suspension. This inference is supported by the plaintiff's representation in her memorandum of law that "[t]he plaintiff asserts in her amended complaint that she was discharged in violation of her right to free speech as to union matters...." Memorandum of Law in Support of Plaintiff's Objection to Defendant Stop & Shop Supermarket Company a/k/a The Stop and Shop Companies, Inc.'s Motion's [sic] to Dismiss at 8.

Third, the allegations of the complaint establish that the alleged conduct of the plaintiff was protected under section 7 of the NLRA. As set forth above, the plaintiff's activity was concerted. The allegations also establish that the plaintiff was acting for the purpose of mutual aid and protection in that the issues that she brought to the attention of management related to working conditions, staffing issues and union matters.[7] *Id.* at ¶¶ 5, 22. The alleged conduct of the plaintiff is therefore arguably protected under section 7 of the NLRA.

The fourth element of a section 8(a)(1) violation, that adverse personnel action was motivated by protected activity, is also satisfied by the allegations of the complaint in that the plaintiff claims that Stop & Shop suspended her for engaging in the protected activity of bringing issues related to working conditions, staffing and union matters to the attention of management. *See Kysor/Cadillac,* 309 N.L.R.B. 237, 1992 WL 301638 (1992) (employer unlawfully reprimanded several employees who assembled at their supervisor's desk seeking clarification of workplace policies).

Because the plaintiff's claim involves conduct that is arguably prohibited under the NLRA, it falls within the primary and exclusive jurisdiction of the NLRB. This court, therefore, is without jurisdiction over this claim and the claim should be dismissed.

## B. CLAIMS OF NEGLIGENT INFLIC-TION OF EMOTIONAL DISTRESS AND INVASION OF PRIVACY THROUGH FALSE LIGHT

The plaintiff's second and third counts assert Connecticut state law tort claims for negligent infliction of emotional distress and for invasion of privacy by false light. Stop & Shop contends that the second and third counts are preempted under *Garmon* or pursuant to section 301 of the Labor Management Relations Act, and that these claims are also partially barred by Connecticut's Workers' Compensation Act. The court will address each of Stop & Shop's contentions in turn.

■ Stop & Shop first contends that the *Garmon* doctrine preempts the plaintiff's claims for negligent infliction of emotional distress and invasion of privacy because these claims are based on conduct that is arguably within the primary jurisdiction of the NLRB. The court disagrees.

Preemption of the second and third counts is not warranted under *Garmon* because, unlike the first count, these claims contain no allegation that Stop & Shop's conduct was undertaken because of any arguably concerted activity by the plaintiff for the mutual aid or protection of Stop & Shop's employees. *San Diego Bldg. Trades Council v. Garmon,* 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959) (federal labor law preempts state regulation when conduct at issue is arguably protected or prohibited under sections 7 or 8 of the NLRA).

The conduct on which the plaintiff bases her claim for emotional distress is Stop & Shop's alleged mishandling of the criminal charges brought against the plaintiff and its refusal to reinstate the plaintiff after she was acquitted. The plaintiff's claim for invasion of privacy is based on Stop & Shop's having allegedly represented to others that the plaintiff was involved in criminal activity. Because there is no allegation that Stop & Shop's conduct was undertaken because of concerted activity by the plaintiff, there is no basis on which the court may conclude that the conduct at issue is arguably protected or prohibited by §§ 7 or 8 of the NLRA. Preemption of the plaintiff's claims in counts II and III is therefore not warranted under the *Garmon* doctrine.

■ Stop & Shop's second argument in favor of dismissal of counts II and III of the

---

7. Although the plaintiff also alleges that she spoke to management about matters of "public concern" (Amended Complaint, First Count, ¶ 5), this allegation is conclusory and not supported by the factual allegations of the Amended Complaint which clearly show that the plaintiff's speech concerned employee issues related to working conditions and staffing matters. *Urashka v. Griffin Hospital,* 841 F.Supp. 468 (D.Conn. 1994) (Cabranes, C.J.) (plaintiff's speech as to terms and conditions of her employment held not to be matters of "public concern" for purposes of Conn. Gen.Stat. § 31–51q).

amended complaint is that those counts are preempted by Section 301 of the LMRA, 29 U.S.C. § 185(a).[8] In other words, Stop & Shop contends that the plaintiff's state law claims are preempted by federal labor law. Stop & Shop's contention is not supported by the law.

Section 301 preempts state law claims to the extent that resolution of those claims "is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract." *Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 220, 105 S.Ct. 1904, 1915–16, 85 L.Ed.2d 206 (1985). Although the preemptive effect of section 301 is broad, the Supreme Court "has been careful to note that section 301 does not preempt state law claims that simply require courts to consider the same *factual* issues that would be raised by claims under a collective bargaining agreement." *Claps v. Moliterno Stone Sales, Inc.*, 819 F.Supp. 141 (D.Conn. 1993) (emphasis in original) (citing *Lingle v. Norge Division of Magic Chef, Inc.*, 486 U.S. 399, 409, 108 S.Ct. 1877, 1883, 100 L.Ed.2d 410 (1988) (emphasis in original)). In *Lingle*, the Supreme Court stated that section 301 preemption merely ensures that federal law will be the basis for interpreting collective bargaining agreements, and says nothing about the substantive rights a State may provide to workers when adjudication of those rights does not depend upon the interpretation of such agreements. In other words, even if dispute resolution pursuant to a collective bargaining agreement, on the one hand, and state law, on the other, would require addressing precisely the same set of facts, as long as the state law claim can be resolved without interpreting the agreement itself, the claim is "independent" of the agreement for § 301 pre-emption purposes.

*Id.* at 409–10, 108 S.Ct. at 1883.

The test for determining whether a state law claim is preempted by section 301 is " 'whether the claims exist independent of any rights established by the contract' or whether the claims are 'inextricably intertwined' with considerations of the terms of the contract." *Paradis v. United Technologies*, 672 F.Supp. 67, 69 (D.Conn.1987) (Dorsey, C.J.) (quoting *Allis–Chalmers*, 471 U.S. at 213, 105 S.Ct. at 1912). *See also Anderson v. Coca Cola Bottling Co.*, 772 F.Supp. 77, 82 (D.Conn.1991).

In this case, the plaintiff's claims of negligent infliction of emotional distress and invasion of privacy are independent of any rights or obligations arising out of the collective bargaining agreement. The plaintiff can prevail on her claim for negligent infliction of emotional distress "by showing that the defendant should have realized that its conduct involved an unreasonable risk of causing emotional distress and that the distress, if it were caused, might result in illness or bodily harm." *Kilduff v. Adams, Inc.*, 593 A.2d 478, 219 Conn. 314, 325 (1991). The plaintiff does not claim that Stop & Shop is liable for negligent infliction of emotional distress because it breached the terms of the collective bargaining agreement. *See Claps v. Moliterno Stone Sales, Inc.*, 819 F.Supp. 141 (D.Conn.1993) (plaintiff's wrongful discharge claim not preempted by section 301 where claim was based on Connecticut common law and plaintiff did not claim that defendants failed to follow termination procedure prescribed in employment contract). Moreover, based on the record before it, the court cannot conclude that resolution of the plaintiff's claim will depend upon a determination of whether the defendant acted in accordance with the collective bargaining agreement.[9]

---

8. Section 301 of the LMRA confers jurisdiction in the district courts of the United States over "suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce." 29 U.S.C. § 185(a). In cases where section 301 is the basis of jurisdiction, it also requires that courts apply federal common law to determine the meaning of the labor contract. *Baldracchi v. Pratt & Whitney Aircraft Div.*, 814 F.2d 102 (2d

Cir.1987), *cert. denied*, 486 U.S. 1054, 108 S.Ct. 2819, 100 L.Ed.2d 920 (1988).

9. Although Stop & Shop argues that resolution of the plaintiff's claims will require interpretation of the collective bargaining agreement, Stop & Shop does not claim the contract gives Stop & Shop the right or privilege to act as the plaintiff has alleged it did. *See Batson v. Shiflett*, 602 A.2d 1191, 325 Md. 684, 602 A.2d 1191 (1992)

The plaintiff's claim is based upon rights under Connecticut common law that are wholly separate from the collective bargaining agreement.

Judge Cabranes decided a similar issue in *Dulay v. United Technologies Corporation,* No. 3:93–CV–2020(JAC), 1994 WL 362149 (D.Conn.1994). In *Dulay,* the plaintiff asserted a claim for negligent infliction of emotional distress arising out of the her discharge from employment. Holding that the claim for negligent infliction of emotional distress was not preempted under section 301, Judge Cabranes reasoned:

> a claim for unintentional infliction of emotional distress does not require the court to determine whether the defendant's conduct exceeded the bounds of the collective bargaining agreement.... Rather, the court must determine whether the defendant's conduct involved an unreasonable risk of causing the plaintiff emotional distress. Because this determination does not require the court to determine whether the plaintiff's discharge was permissible under the collective bargaining agreement, claims for unintentional infliction of emotional distress arising from the defendant's decision to terminate the plaintiff's employment are not preempted by Section 301.

*Id.* at *3 (citations omitted). *See also Ziobro v. Connecticut Institute for the Blind,* 818 F.Supp. 497, 501 (D.Conn.1993) (Cabranes, C.J.) (plaintiff may demonstrate the requirements of a claim for unintentional infliction of emotional distress without reference to the collective bargaining agreement). Because the plaintiff's claim for negligent infliction of emotional distress is not substantially dependent upon an analysis of the terms of the collective bargaining agreement, the claim should not be dismissed.

██ The plaintiff's claim of invasion of privacy is also independent of the collective bargaining agreement. To establish a claim of invasion of privacy by false light, the plaintiff must show that the false light in which she was placed would be highly offensive to a reasonable person, that the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the plaintiff would be placed. *Jonap v. Silver,* 474 A.2d 800, 1 Conn.App. 550 (1984). Like the claim for negligent infliction of emotional distress, the plaintiff's claim for invasion of privacy is based upon an alleged violation of rights under Connecticut law that are wholly separate from any agreement between Stop & Shop and the union. Because this claim does not require the court to interpret the terms of the collective bargaining agreement, it is not preempted by Section 301 of the LMRA. *Claps v. Moliterno Stone Sales, Inc.,* 819 F.Supp. 141 (D.Conn.1993).

██ Stop & Shop next argues that the exclusivity provision of Connecticut's Workers' Compensation Act bars the plaintiff's tort claims to the extent that they seek damages for physical distress prior to the plaintiff's termination. The court agrees.

██ The plaintiff alleges that as a result of Stop & Shop's alleged tortious conduct she suffered physical distress, as well as mental and emotional distress, depression, humiliation, embarrassment, anguish, anxiety, tension, irritability, fear and insomnia. Amended Complaint, Second Count ¶ 24, Third Count ¶ 25. Pursuant to Section 31–284(a) of the Connecticut General Statutes, Connecticut's Workers' Compensation Act provides the exclusive rights and remedies between an employer and employees arising out personal injury sustained in the course of employment. The Workers' Compensation Act, however, does not apply to claims for emotional impairment, *see* Conn. Gen.Stat. 31–275(16)(B); *Bennett v. Beiersdorf, Inc.,* 889 F.Supp. 46, 51 (D.Conn.1995), or to claims for injuries arising out of the discharge of an

---

(emotional distress claim not preempted by section 301 where claims did not turn upon labor contract and defendant did not claim that contract gave it right or privilege to act in manner to cause the plaintiff emotional distress). Stop & Shop has failed to identify what clause or section of the contract would need to be interpreted to resolve the plaintiff's claims. Stop & Shop's bald, conclusory assertions that the plaintiff's claims will turn upon an interpretation of the contract are insufficient to satisfy the burden that Stop & Shop must carry to prevail on its motion to dismiss.

employee. *Ziobro v. Connecticut Institute for the Blind*, 818 F.Supp. at 502–03; *Fulco v. Norwich Roman Catholic Diocesan Corp.*, 609 A.2d 1034, 27 Conn.App. 800, 808 (1992) (holding that "[i]t would unduly strain the language of the statute for us to conclude that termination of employment creates a job-related injury"). The plaintiff's claims for damages for emotional distress or for damages arising out of the termination of her employment are therefore not barred by the exclusivity provision of the Workers' Compensation Act. However, to the extent that the plaintiff seeks damages for physical distress not arising out of the termination of her employment, those particular claims should be barred by the exclusivity provision of the Workers' Compensation Act.

### III. THE UNION'S MOTION TO DISMISS

The union moved to dismiss the seventh count of the plaintiff's original complaint for failure to state a claim upon which relief may be granted on the grounds that (1) the plaintiff cannot assert a claim for breach of contract against the union because the contract at issue is not between the union and the plaintiff, but between the union and Stop & Shop; (2) even if the plaintiff were able to assert a claim for breach of contract, such a claim is preempted by Section 301 of the Labor Management Relations Act and the union's duty of fair representation pursuant to Sections 8(b) and 9(a) of the National Labor Relations Act, because resolution of the claim would be dependent upon an analysis of the collective bargaining agreement; and (3) if the plaintiff's claim is one of breach of the union's duty of fair representation, the claim is not properly asserted as arising under Sections 8(b) and 9(a) of the NLRA, 29 U.S.C. § 158(b) and 159(a).

The plaintiff filed an amended complaint which revises her claim against the union from one for breach of contract to a claim for breach of the union's duty of fair representation pursuant to 29 U.S.C. § 158(b) and 159(a). *See* Amended Complaint, Fourth Count. As pleaded in the amended complaint, the fourth count addresses and cures all three of the grounds on which the union

has moved to dismiss the plaintiff's claim against it. However, in her objection to the union's motion, the plaintiff also defends against an argument which the union did not advance, namely, that portions of her claim against the union are barred by a six month statute of limitations. Although not originally raised by the union, this issue has been fully briefed by both of the parties and is ripe for decision by the court.

The union argues dismissal of the claims made in paragraph 29, subparts (a) through (e), and the facts alleged in support of these claims. The relevant portions of paragraph 29 read as follows:

29. The defendant, its agents, servants and/or employees acted in bad faith and arbitrarily in that:

(a) they arbitrarily and in bad faith failed to represent the plaintiff upon her complaint to defendant Stop & Shop about her working conditions;

(b) they arbitrarily and in bad faith advised the plaintiff to document her complaints about the working conditions and the events of the meetings held between the plaintiff, co-employees and Mr. Martin Perry on February 18, 1994;

(c) they arbitrarily and in bad faith advised the plaintiff to provide a copy of the letter documenting the working conditions and the meetings which took place between the plaintiff, co-employees and Mr. Martin Perry on February 18, 1994 to Mr. Martin Perry;

(d) they arbitrarily and in bad faith made no effort to meet with the plaintiff to discuss the criminal charges that had been rendered against [the plaintiff] on the complaint of Stop & Shop;

(e) they arbitrarily and in bad faith made no effort to ascertain the truth of the criminal charges that were levied against the plaintiff by defendant, Stop & Shop. . . .

The union seeks dismissal of the above claims for failure to state a claim upon which relief may be granted on the ground that the plaintiff did not bring her claim for breach of the duty of fair representation within the applicable limitations period.

■ A cause of action for breach of the duty of fair representation is implied under the National Labor Relations Act. *Phelan v. Local 305 of the United Association of Journeymen,* 973 F.2d 1050, 1059 (2d Cir.1992) (citing *DelCostello v. International Broth. of Teamsters,* 462 U.S. 151, 164 & n. 14, 103 S.Ct. 2281, 2290–91 & n. 14, 76 L.Ed.2d 476 (1983), *cert. denied,* 507 U.S. 972, 113 S.Ct. 1415, 122 L.Ed.2d 785 (1993)). There is no express statute of limitations that applies to such claims. In cases such as this, where the federal statute under which a plaintiff bring an action does not provide a specific limitations period, federal courts must determine the appropriate limitations period according to federal law. *Phelan,* 973 F.2d at 1058. This normally entails borrowing the most closely analogous state statute of limitations or, in certain circumstances, a federal rule of limitations. *Id.* It is appropriate to "borrow federal rather than state limitations periods where (1) a federal rule of limitations clearly provides a closer analogy than state alternatives, and (2) the federal policies at stake and the practicalities of the litigation render the federal limitation a significantly more appropriate vehicle for interstitial lawmaking." *Id.*

■ The plaintiff contends that the claim of breach of duty of fair representation is basically an action sounding in negligence and therefore, urges the court to adopt Connecticut's two year limitation period for negligence actions pursuant to Conn. Gen.Stat. § 52–584. The union contends that the six month limitations period for filing charges with the National Labor Relations Board set forth at § 10(b) of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 160(b), should be applied.

In *DelCostello v. International Broth. of Teamsters,* 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983), the Supreme Court held that the six month limitation period of § 10(b) of the NLRA applied in a hybrid section 310/fair representation claim—where the union member sues both an employer and a union alleging the employer's breach of a collective bargaining agreement and the union's breach of its duty of fair representation by mishandling the ensuing grievance or

arbitration proceeding—because of the similarity of such claims to charges of unfair labor practices. Since *DelCostello,* the Second Circuit Court of Appeals has repeatedly held that claims for breach of the duty of fair representation, standing alone, are also subject to the six month statute of limitations of § 10(b) of the NLRA. *E.g., Phelan v. Local 305 of the United Association of Journeymen,* 973 F.2d 1050, 1060 (2d Cir.1992), *cert. denied,* 507 U.S. 972, 113 S.Ct. 1415, 122 L.Ed.2d 785 (1993); *Gvozdenovic v. United Air Lines, Inc.,* 933 F.2d 1100, 1106 (2d Cir.), *cert. denied,* 502 U.S. 910, 112 S.Ct. 305, 116 L.Ed.2d 248 (1991); *Haerum v. Air Line Pilots Ass'n,* 892 F.2d 216, 219 (2d Cir.1989); *Eatz v. DME Unit of Local Union Number 3,* 794 F.2d 29 (2d Cir.1986); *Engelhardt v. Consolidated Rail Corp.,* 756 F.2d 1368, 1369–70 (2d Cir.1985) (per curiam).

■ Accordingly, the plaintiff's cause of action for breach of the duty of fair representation is subject to a six month limitations period beginning at the time that the cause of action accrued. A cause of action for breach of the duty of fair representation accrues "no later than the time when [the plaintiff] knew or reasonably should have known that such a breach had occurred." *Legutko v. Local 816, International Brotherhood of Teamsters,* 853 F.2d 1046, 1055 (2d Cir.1988) (quoting *Santos v. District Council of New York,* 619 F.2d 963, 969 (2d Cir. 1980)); *Eatz v. DME Unit of Local Union Number 3,* 794 F.2d 29 (2d Cir.1986).

■ This action was originally commenced on April 2, 1996, when the union was served with the summons and complaint. Any claim for breach of the duty of fair representation which accrued prior to October 2, 1995 is therefore time barred. Although the date on which the facts alleged in paragraph 29(a) is not identified, the claim appears to refer to the alleged failure of the union to represent the plaintiff in connection with the complaint she made on February 18, 1994. In any event, any complaint that the plaintiff may have had about her working conditions had to have occurred prior to the plaintiff's suspension from work on May 26, 1994. The plaintiff acknowledges that under the collective bargaining agreement the un-

 had 30 days from the date of an alleged incident in which to notify the company of a grievance. *See* Memorandum of Law in Support of Plaintiff's Objection to United Food and Commercial Workers Union, Local 919, Motion to Dismiss at 6–7. Therefore, the plaintiff should have known of the union's alleged failure to represent her in connection with her complaints regarding working conditions no later than 30 days following her suspension, June 26, 1994. The claim asserted in paragraph 29(a) therefore accrued more than six months before the commencement of this action. It is therefore recommended that this claim be dismissed.

The claims asserted in paragraphs 29(b) and (c) pertain to the alleged failure of the union to represent the plaintiff in connection with the alleged events of February 18, 1994. Based on the 30 day period for notification of grievances, the plaintiff was on notice as of March 20, 1994 that the union would take no further action in connection with the alleged events of February 18, 1994. Her cause of action on these claims therefore accrued on March 20, 1994. Because this action was not commenced within six months from March 20, 1994, it is hereby recommended that these claims be dismissed.

It is not clear when the alleged acts or omissions set forth in paragraphs 29(d) and (e) occurred. Viewing these allegations in the light most favorable to the plaintiff, these claims may have accrued in connection with the meeting on October 20, 1995 and would therefore have been brought within the six month statute of limitations. It is therefore recommended that these claims not be dismissed.

### CONCLUSION

Based on the foregoing, the court hereby recommends that Stop & Shop's motion to dismiss filed on May 9, 1996 (doc. # 10) be denied and that Stop & Shop's motion to dismiss filed June 7, 1996 (doc. # 22) be granted as to the claims asserted in count I and the claims for damages for physical injury not arising out of the termination of the plaintiff's employment in counts II and III, and that the motion be denied as to the remainder of the claims asserted in counts II

and III. The court further recommends that the union's motion to dismiss (doc. # 8) be granted as to the claims made in subparagraphs 29(a), (b) and (c) of count IV and denied in all other respects.

A party may seek district court review of a recommended ruling by a magistrate judge. *See* 28 U.S.C. § 636(b) (written objections to proposed findings and recommendations must be filed within ten days after service of same); Fed.R.Civ.P. 6(a), 6(e) & 72; Rule 2 of the Local Rules for United States Magistrate Judges, United States District Court for the District of Connecticut; *Thomas v. Arn,* 474 U.S. 140, 155, 106 S.Ct. 466, 474–75, 88 L.Ed.2d 435 (1985); *Frank v. Johnson,* 968 F.2d 298, 300 (2d Cir.1992) (failure to file timely objection to Magistrate Judge's recommended ruling waives further review of the ruling).

DATED: New Haven, Connecticut

March 10, 1997