Ilene OPPENHEIM, Plaintiff,

v.

Thomas GUTTERIDGE, Dennis Gruell and Virginia Miller, Defendants.

No. 3:00CV1723(RNC).

United States District Court,
D. Connecticut.

Sept. 30, 2002.

John R. Williams, Williams & Pattis, New Haven, CT, for Plaintiff.

Paul Mark Shapiro, Paul S. McCarthy, Attorney General's Office, Storrs, CT, for Defendant.

## RULING AND ORDER

CHATIGNY, District Judge.

Plaintiff, formerly Regional Director of the Connecticut Small Business Development Center ("CSBDC"), a division of the University of Connecticut School of Business Administration, brings this action under 42 U.S.C. § 1983 claiming that she was wrongfully discharged in violation of her Fourteenth Amendment rights to substantive due process and equal protection, and her First Amendment right of free speech as a public employee. She also makes a claim under Connecticut law for intentional infliction of emotional distress.[1] The gist of the complaint is that she was subjected to abusive conduct by defendant Dennis Gruell, the State Director of the CSBDC, complained about it informally to her union representative, and was fired as a result. The other defendants are Thomas Gutteridge, who was Dean of the Business School at the pertinent time, and Virginia Miller, who was the University's Vice Chancellor of Human Resources.

All three defendants have filed a motion for summary judgment [doc. 23–1]. On the record before the court, plaintiff cannot prove that Gruell mistreated her because she is a woman, or that her complaints to her union representative accused him of doing so. Accordingly, the motion is granted as to the federal claims, which are dismissed with prejudice, but denied as to the state law claim, which is dismissed without prejudice.

### I. Facts

Plaintiff was Regional Director of the CSBDC in Waterbury from 1991 until September 1998. The mission of the CSBDC is to provide service and advice to small businesses.

In August 1997, Gutteridge appointed Gruell to the position of State Director, which made him plaintiff's direct supervisor. Gruell's staff consisted of one male and five females.

Before Gruell was appointed, Gutteridge realized that plaintiff was receiving $10,000 in annual supplemental income from her host agency, although the project for which the additional funds were originally awarded had been terminated. Because other regional directors were not similarly compensated, Gutteridge instructed Gruell to notify plaintiff that the payments would cease in 1998.

On November 4, 1997, Gruell visited plaintiff's office to address the supplemental funding issue and to meet with her host

---

1. A procedural due process claim has been abandoned.

agency, the Naugatuck Valley Development Corporation ("NVDC").[2] According to plaintiff's account, which is accepted as true for purposes of this ruling, Gruell entered her office before the meeting began and told her in a threatening and demeaning manner, "I won't take any shit from you. Don't open your mouth. You understand me? Don't open your mouth!" When NVDC representatives arrived and plaintiff attempted to introduce Gruell, he again told her to "shut up." According to plaintiff, Gruell's aggressive, threatening behavior persisted throughout the meeting and was also directed against a male participant, Dan Saul. Plaintiff reported the incident to her union representative who contacted defendant Miller.

In December 1997, plaintiff met with Gruell in his office, and he again behaved in a threatening manner. Plaintiff used the telephone to call her union representative in his presence and left a message indicating that she was again being mistreated by Gruell.

Plaintiff's union representative reported her complaints to Miller. In response, Miller arranged a meeting on February 2, 1998, which she attended along with the plaintiff, several union representatives, and Gutteridge. Another meeting took place on February 9, with Gruell present, at which time plaintiff and Gruell entered into a written agreement that they would limit their personal interaction and rely more on written communications. They also agreed that whenever they met a third party would also attend the meeting. *See* Defs.' 9(c)(1) statement at ¶¶ 36–38.

In April 1998, Miller received a letter from plaintiff's union representative stating that plaintiff felt Gruell had violated the agreement by sending her a letter stating that the agreement could not prevent him, in his supervisory capacity, from visiting offices, going to meetings, and attending workshops where she might be present. In due course, Miller responded that she looked into the matter and concluded that plaintiff's complaint about the alleged breach was unfounded. *See* Miller Aff. at exh. C.

According to plaintiff, Gruell retaliated against her by refusing to approve her request for vacation, refusing to provide necessary staffing and equipment for her office, and insisting with Gutteridge's approval that her office be relocated to an unsafe location.

On August 13, 1998, Gruell signed a payroll authorization renewing her annual contract. Plaintiff did not receive the form, or know it existed, before she was informed that her annual contract would not be renewed.

Plaintiff was so informed on August 27, 1998, when she was handed the letter at a meeting with the defendants. The letter stated that a decision had been made to shift the focus of her office to providing specialized manufacturing technical assistance, which would require a manager with specific manufacturing experience she lacked. The official termination date stated in the letter was November 24, 1998, which complied with a three month notice requirement in the collective bargaining agreement. Gruell sent a memo to his staff announcing that plaintiff would not be reappointed due to the shift in focus to manufacturing.[3] Plaintiff was replaced by

---

**2.** Gruell met with his regional directors soon after his appointment and requested that they arrange meetings for him with their host entities. *See* Defs.' Local Rule 9(c)(1) statement at ¶ 29.

**3.** Plaintiff claims to have later obtained a copy of the CSBDC federal grant award for the year 1998–99, which, according to her, does not reflect the shift in focus. Plaintiff has not supported this allegation by affidavit

a male employee who had a master's degree in business and many years of manufacturing experience.[4]

Plaintiff alleges that Gruell ordered her to leave work before her termination date and had other employees telephone her at home during a religious holiday.

In September 1998, plaintiff's union filed a grievance on her behalf against the University alleging that she was terminated in retaliation for exercising a contractual right to seek union representation in dealing with the actions of her supervisor. In January 2000, the Connecticut State Board of Labor Relations concluded, after a hearing, that defendants had not retaliated against plaintiff as claimed.

## II. Discussion

On a motion for summary judgment, the evidence is viewed in a light most favorable to the non-moving party. However, to withstand the motion, a plaintiff who has the burden of proof on a disputed issue may not rely on conclusory allegations. See Fed. R. Civ. Proc. 56(e); *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir.1998). Plaintiff runs afoul of this rule because she opposes the defendants' motion without providing any affidavits, deposition testimony or other admissible evidence to support her allegations.

### Substantive Due Process Claim

■ Plaintiff claims that her right to substantive due process was violated by Gruell when he mistreated her and by all three defendants when they retaliated against her for complaining to her union representative. See Pl.'s opp'n mem. at 7–8 (not paginated).

To prevail on this claim, plaintiff must prove that defendants' conduct shocks the conscience. See *Gargiul v. Tompkins*, 704 F.2d 661 (2d Cir.1983), *vacated & remanded on other grounds*, 465 U.S. 1016, 104 S.Ct. 1263, 79 L.Ed.2d 670 (1984); *Reed v. Town of Branford*, 949 F.Supp. 87, 90–91 (D.Conn.1996) (citing *Interport Pilots Agency v. Sammis*, 14 F.3d 133, 144 (2d Cir.1994)). The conduct she alleges does not fall within the narrow scope of the conscience-shocking standard. See *De-Leon v. Little*, 981 F.Supp. 728, 734 (D.Conn.1997) (supervisor's intimidation and harassment of subordinate insufficient to constitute violation of substantive due process). Accordingly, this claim is dismissed.[5]

### First Amendment Retaliation Claim

■ To prevail on her public employee free speech-retaliation claim, plaintiff must prove that she engaged in speech on a matter of public concern and suffered an adverse employment action as a result. See *Gorman–Bakos v. Cornell Cooperative Extension of Schenectady County*, 252 F.3d 545 (2d Cir.2001).

Speech is protected if it relates to any matter of political, social, or other concern

nor has she submitted a copy of the grant award.

4. Although plaintiff denies that her replacement had these qualifications, she offers no support for that assertion to contradict the resume provided by defendants. See doc. 25 at ¶ 57; doc. 27 at exh. H.

5. To the extent plaintiff's due process claim is based on retaliation for her complaint to the union, it adds nothing to her claim based on the First Amendment. See *Albright v. Oliver*, 510 U.S. 266, 273, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) (when right at issue is grounded in explicit source of constitutional protection, substantive due process analysis does not apply); *Kaluczky v. City of White Plains*, 57 F.3d 202, 211 (2d Cir.1995) (applying this precept in the First Amendment retaliation context). To the extent it is based on sex discrimination, it adds nothing to her claim based on the Equal Protection Clause. Cf. *Reed v. Town of Branford*, 949 F.Supp. 87, 90 (D.Conn.1996) (applying *Albright* in age discrimination context).

to the community. *Lewis v. Cowen,* 165 F.3d 154, 161 (2d Cir.1999) (citing *Connick,* 461 U.S. at 146, 103 S.Ct. 1684). "[S]peech on a purely private matter, such as an employee's dissatisfaction with the conditions of his employment, does not pertain to a matter of public concern." *Lewis,* 165 F.3d at 164; *see also Colburn v. Trustees of Indiana University,* 973 F.2d 581, 587 (7th Cir.1992). An employee's personal interest in speech does not deprive it of protection if it is overshadowed by her interest as a citizen in speaking on a matter of public concern. *See Lewis,* 165 F.3d at 164; *Colburn,* 973 F.2d at 587; *Cahill v. O'Donnell,* 75 F.Supp.2d 264, 272–73 (S.D.N.Y.1999) (citing *White Plains Towing Corp. v. Patterson,* 991 F.2d 1049, 1059 (2d Cir.1993)).

■ Plaintiff's retaliation claim fails because her complaints to the union were "personal in nature and generally related to her own situation." *Saulpaugh v. Monroe Community Hospital,* 4 F.3d 134, 143 (2d Cir.1993) (quoting *Ezekwo v. NYC Health & Hospitals Corp.,* 940 F.2d 775, 781 (2d Cir.), *cert. denied,* 502 U.S. 1013, 112 S.Ct. 657, 116 L.Ed.2d 749 (1991)). Though she now characterizes the complaints in terms of pervasive sex discrimination at the CSBDC, all she complained about was her own dissatisfaction with the way she personally was being treated by Gruell. A confidential memorandum drafted by Miller summarizing a meeting with the plaintiff in February 1998 describes a discussion aimed exclusively at improving plaintiff's professional relationship with Gruell. *See* Miller Aff. exh., A. Plaintiff offers no evidence that she actually complained about sex discrimination and

sought to bring to light a discriminatory policy or practice.[6]

*Equal Protection Claim*

Plaintiff's equal protection claim fails because the evidence before the court, even construed most favorably to her, would not permit a reasonable jury to find that she was subjected to adverse action because of her sex.

■ With regard to Gruell's abusive behavior, plaintiff alleges that he had a "hatred of women he supervised." Am. Compl. at ¶ 13. However, there is no allegation or evidence that he made remarks to her suggestive of sex discrimination and she concedes that he was verbally abusive to Mr. Saul. On this record, it is at least equally plausible that Gruell abused the plaintiff because he disliked her personally without regard to her sex or because he was generally abusive to both males and females.[7]

■ With regard to the nonrenewal of plaintiff's annual contract, plaintiff has met her initial burden of showing that she was qualified for her position and was replaced by a male. *See* Am. Compl. at ¶ 28; Pl.'s 9(c)(2) statement at ¶ 15. Defendants' explanation that plaintiff was not renewed because she was not qualified to refocus the office is sufficient to satisfy their burden of providing a nondiscriminatory reason for the challenged action. *See* Miller Aff. at ¶¶ 15–19; Gutteridge Aff. at ¶¶ 32–35 and exh. C; doc. 27 at ¶¶ 9, 21 (Gruell Aff.); Defs.' 9(c)(1) statement at ¶¶ 9, 13. Thus, the burden shifts to plaintiff to demonstrate that the proffered reason is false and that the nonrenewal was motivated at

---

6. Plaintiff's informal complaints to the union are insufficient to support a retaliation claim based on union activity.

7. Plaintiff alleges that four other females were forced to leave because of Gruell's aggressive,

threatening behavior toward them. Am. Compl. at ¶ 13. But she offers no admissible evidence to support the allegation, which is insufficient in itself to create a triable issue. *See Shoaf v. Matteo,* 100 F.Supp.2d 114, 117 (D.Conn.2000).

least in part by discrimination. *Quaratino v. Tiffany & Co.*, 71 F.3d 58, 64 (2d Cir. 1995) (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 539–540, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993) (Souter, J., dissenting)).

Construed most favorably to the plaintiff, the record arguably permits a reasonable inference that defendants' explanation is a pretext. The defendants rely on their own affidavits and the record indicates that plaintiff was considered qualified for the "new" position by a recruiter. Accordingly, I assume for purposes of this ruling that a jury could find that the explanation offered by the defendants is untrue.

In some cases, a plaintiff's prima facie case coupled with a finding of pretext can support an inference of discrimination. *See James v. New York Racing Association*, 233 F.3d 149, 154 (2d Cir.2000). In my view, this is not such a case. Plaintiff's prima facie case is not particularly strong and her proof of pretext is only arguably sufficient. Moreover, the defendants have asserted that Gruell supported training or upgrades for three of his female subordinates, an assertion that is uncontroverted and thus deemed admitted. See Defs.' 9(c)(1) statement at ¶ 27. Viewing the record as a whole, a jury would have to speculate to find that plaintiff's annual contract was not renewed because of her sex; it is at least as likely that it was not renewed because of her strained relationship with Gruell.[8]

### III. Conclusion

Accordingly, defendants' motion for summary judgment is granted and the federal claims are dismissed with prejudice. The court declines to exercise jurisdiction over the pendent state law claim, which is dismissed without prejudice. The Clerk may close the file.

So ordered.

---

8. Gruell's refusal of plaintiff's requests for vacation, necessary staffing, equipment, and a different location for her office do not provide a basis for an equal protection claim because a reasonable jury could not infer that his decisions were motivated by sex discrimination.